UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTONIO CABALLERO | ) | |
| Plaintiff | ) | CIVIL ACTION NO.: |
| | ) | |
| V. | ) | 3:20-CV-01939-RNC |
| | ) | |
| REVOLUTIONARY ARMED FORCES OF | ) | |
| COLOMBIA—PEOPLE'S ARMY A/K/A | ) | |
| FUERZAS ARMADAS REVOLUCIONARIAS | ) | |
| DE COLOMBIA—EJÉRCITO DEL PUEBLO, | ) | |
| AND NORTE DE VALLE CARTEL | ) | |
| Defendants | ) | FEBRUARY 26, 2021 |
| | ) | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS THIRD-PARTY
COMPLAINT AND COUNTERCLAIMS AS SUPERFLUOUS**

This brief is submitted pursuant to Local Rule 7(d) in support of Plaintiff Antonio

Caballero's ("Caballero") motion to dismiss Interactive Brokers, LLC's February 5, 2021 third-

party complaint and counterclaims [D.E. 64] (the "Third-Party Complaint") pursuant to FRCP

12(b)(6).

Interactive Brokers seeks to go far beyond what would be permitted at this stage in the

proceedings – that is, far beyond a determination of interests following a turnover order.

Caballero has waited patiently for turnover, and the delays caused by Interactive Brokers have in

actuality been to opportunistically seek protections beyond Conn. Gen. Stat. §52-356(c).

At the eleventh hour, Interactive Brokers has attempted to bring a third-party complaint,

which it is not authorized to bring pursuant to the applicable federal rules of civil procedure, as

well as counterclaims, which are glaringly absent from the pleading. Interactive Brokers has

further invoked belated, improper, and unnecessary interpleader relief, disingenuously claiming

that it fears "multiple and inconsistent liability" [D.E. 64 at ¶ 49], when in fact, only Caballero

has bothered to: (i) appear before this Court; (ii) obtain a writ issued out of a Connecticut court;

and, (iii) obtain a Turnover Order from this Court.

ALBA Petroleos de El Salvador S.E.M. de C.V.'s ("ALBA Petroleos") has, to this now very late date, failed to appear in this action despite having notice of same.  Nevertheless, Interactive Brokers somehow deems it appropriate that it – a supposed "neutral stakeholder," *id.* at ¶3 – should delay proceedings, to the detriment of Caballero, for a sanctioned entity that cannot even be bothered to appear before this Court.

Stansell and Pescatore, both of whom have invalid extraterritorial writs, unsurprisingly (by Interactive Brokers own account) welcome Interactive Brokers' suggested belated interpleader.  Interactive Brokers relates that Stansell and Pescatore shall seek to move the proceedings to an interpleader action in another jurisdiction. D.E. 65 at 12. Put another way, Stansell and Pescatore would attempt to have a "statutory interpleader" in another state govern the disposition of the *res* at issue in order to continue to attempt to avoid this court. Why? Because Stansell and Pescatore did not respect, nor follow, the laws of attachment over which this Court has to date presided. In doing so, Stansell and Pescatore flout this Court's jurisdiction, despite this being an "*in rem*" proceeding, wherein Interactive Brokers itself has repeatedly stated the applicable asset is located exclusively within the territorial jurisdiction of this court. Stansells' and Pescatores' behavior is all the more egregious given the United States District Court for the Southern District of New York's instruction to them that "the District of Connecticut has, and has exercised, jurisdiction over these assets." *Stansell et al. v. FARC et al.*, Case No. 1:16-mc-00405-ALC (S.D.N.Y. 2020) (the "Stansell SDNY Action"), D.E. 162. Yet, these parties have apparently have no regard for that ruling. *See* Email Thread, D.E. 66-1.

Interactive Broker over-reaches, well-past the Determination of Interests statute, that it is in fact fortunate to at this late stage in the proceedings still have at its disposal. Its overreaching

portends to open the door for Stansell and Pescatore to not only attempt to flout the jurisdiction of this Court, but to attempt to move the proceedings elsewhere so that their failure to serve their invalid foreign writ in Connecticut – which was second in time no less – be overlooked to the detriment of Caballero, who continues to patiently await the fulfillment of the valid and legal sufficient Turnover Order.  For the reasons more fully described below, Caballero respectfully requests that this Court dismiss the Third-Party Complaint and counterclaims, in their entirety and *with prejudice*, for failure to state a claim for which relief can be granted.

## ARGUMENT

### I. INTERPLEADER IS NOT NECESSARY BECAUSE CABALLERO IS THE ONLY APPEARING INTERESTED PARTY

The premise upon which Interactive Brokers brings this improper Third-Party Complaint (i.e. that there exist multiple claims to the blocked Account[1]) is incorrect. *See* D.E. at ¶ 2.  Only Caballero has attached the blocked Account.  The Stansell and Pescatore judgment creditors merely have an extraterritorial writ issued out of the Southern District of New York, which failed to properly attach the blocked Account.  In fact, unlike Caballero, the Stansell and Pescatore judgment creditors do not even have a turnover order.  Moreover, unlike the other alleged adverse claimants (i.e. the Stansell and Pescatore judgment creditors and ALBA Petroleos), Caballero has actually appeared before this Court to assert his interest in the blocked Account and has already obtained a turnover order from this Court.  Given that there are no adverse claimants in this action, there is no need for an interpleader (or any further hearing with respect to the Stansell and Pescatore Judgment Creditors and ALBA Petroleos), and Interactive Brokers should comply with this Court's Turnover Order.

#### a. The Marshal's Service on Behalf of Caballero was Proper

[1] The "Account" refers to the account in the putative name of ALBA Petroleos, referenced by Interactive Brokers in paragraph 1 of its Third-Party Complaint.

Interactive Brokers admits that Caballero utilized a marshal to effect service: "***the marshal attempted in-person service of the TRO and related papers at the <u>Greenwich, Connecticut headquarters of Interactive Brokers</u>***." Third-Party Complaint, D.E. 64 at ¶ 19. [emphasis added]. Despite such admission, Interactive Brokers absurdly implies that the marshal's service is defective. Nonsense.  The truth belying Interactive Brokers' weak attack upon the marshal's service is to cast doubt on the prior proceedings before this Court in order to mask its own failure to invoke an interpleader within the appropriate timeframes (i.e. prior to this Court issuing its final Turnover Order in favor of Caballero).[2]

On December 24, 2020, a marshal went to Interactive Brokers' place of business to serve the relevant papers. *Id.* The marshal showed up in person. Upon being informed that the Interactive Brokers' workforce was working remotely due to the pandemic, the marshal completed e-mail service of the relevant papers *as instructed by Interactive Brokers'* personnel (i.e., a security guard). *Id.* Having served the relevant papers in-person at Interactive Broker's place of business, and then completed e-mail service pursuant to Interactive Brokers' own instructions, no one can credibly argue that the marshal's service is deficient.

The fact Interactive Broker's flagged the marshal's service email "as a potential phishing e-mail" [D.E. 64 at ¶ 19] and ignored the marshal's service email has no bearing on whether the marshal effected service and certainly does not excuse Interactive Brokers from knowing its contents. The marshal and Caballero should not and cannot bear the burden of Interactive Broker's internal errors to ignore service of relevant papers in a legal proceeding.  Notably, the

---

[2] Courts frown upon proceedings initiated after final turnover judgment when they cause prejudice to the existing party. *See Lasala v. Needham & Co.*, No. 04 civ. 9237 (SAS), 2006 U.S. Dist. LEXIS 25882, at \*26-27 (S.D.N.Y. Apr. 28, 2006) ("As one court has noted, '***intervention after final judgment is disfavored*** precisely because by its very nature 'it fosters delay and prejudice to existing parties.'") (emphasis added).

marshal never received notice of Interactive Broker's actions because the marshal was never notified that his email was being deleted and not read.[3]

Following the issuance of the Turnover Order, and prior to the physical service of same upon Interactive Brokers, Caballero served Interactive Brokers with same via email. *See* D.E. 64 at ¶ 24 (citing D.E. 55). To date, counsel for Caballero has not received a response to his January 15th email.

### i. Interactive Brokers had "actual notice" prior to the issuance of the turnover order

Setting aside Interactive Brokers' implicit and unfounded attacks on the marshal's service, the fact remains that Interactive Brokers had "**actual notice**" of Caballero's collection efforts prior to the Court issuance of the Turnover Order [D.E. 53] on January 14, 2021. Indeed, even if Interactive Brokers were to contest the marshals' service of the relevant papers on December 24, 2020 (and it should not because such service was proper, yet willfully ignored by Interactive Brokers), Interactive Brokers admits it had actual notice despite its internal errors by January 7, 2021.[4]

The fact that Interactive Brokers had (in addition to proper service) "actual notice" by January 7, 2021 – at the latest – cannot be understated. January 7, 2021 was the date of this Court's hearing on Caballero's request for turnover. D.E. 43 at 5, ¶ 1. Yet, neither Interactive Brokers nor ALBA Petroleos appeared at the hearing. In fact, despite having actual notice of

---

[3] Indeed, Interactive Brokers took no steps whatsoever to contact the marshal regarding the service email even though: (i) the email clearly indicated that it came from a Connecticut marshal; (ii) the marshal's telephone number in the email matched the number published by the State of Connecticut; (iii) the email mentioned the TRO, the name of the sitting judge who issued the TRO, and the hearing date on the motion for turnover [D.E. 63-1 at 13]; and (iv) the email mentioned the Interactive Brokers security guard's refusal of delivery of the papers and instruction to email compliance@interactivebrokers.com, indicating the security guard's knowledge of Interactive Brokers' procedures.

[4] *See* Opp., D.E. 65 at 4 ("*The marshal's U.S. Postal Service mailing of the TRO and related papers was not delivered to Interactive Brokers in Greenwich until January 4, 2021*. (ECF No. 45.) The Greenwich office is staffed by only a security guard due to the COVID-19 pandemic. As a result, *the package was not routed to*

Caballero's collection efforts in this Court by said date, Interactive Brokers did not bother to

contact Caballero nor did it bother to file any document objecting to Caballero's turnover.

Having blown its right to object to Caballero's Turnover Order, Interactive Brokers now resorts

to an improper and unnecessary interpleader, all the while casting aspersions on the proper

procedures utilized by the marshal.

> **b. The Stansell and Pescatore Judgment Creditors are not True Interested**
> **Parties in the Blocked Account**
>
> > **i. Any potential claims by the Stansell and Pescatore judgment creditors**
> > **are time-barred**

The Stansell and Pescatore judgment creditors have chosen not to appear before this

Court and have further failed to assert whatever claim they might have had to the blocked

Account. As such, any potential claims the Stansell and Pescatore judgment creditors may raise

in the future would be time-barred.

This is a post-judgment proceeding governed by FRCP 69.  In this case, the applicable

Connecticut procedural statute is Connecticut General Statutes §52-356c, providing:

> (a)   Where a dispute exists between the judgment debtor or judgment creditor
> and a third person concerning an interest in personal property sought to be
> levied on, or where a third person claims that the execution will prejudice
> his superior interest therein, ***the judgment creditor or third person may***,
> ***<u>within twenty days of service of the execution or upon application by the</u>***
> ***<u>judgment creditor for a turnover order</u>, make a claim for determination***
> ***of interests pursuant to this section.***

[Emphasis added]. The Stansell and the Pescatore judgment creditors have had knowledge of

Caballero's Turnover Order since, at the latest, January 18, 2021[5]– far more than the 20 days

contemplated by the above statute. Thus, pursuant to the above statute, the Stansell and the

---

*Interactive Brokers' legal department* until *January 7, 2021*.") (emphasis added).
[5] On January 18, 2021, Caballero filed a letter directed to the Honorable Judge Carter of the United States District
Court for the Southern District of New York, referencing Caballero's Turnover Order, in *Stansell, et al. v. FARC, et
al.,* No. 16-MC-00405-ALC, D.E. 140.

Pescatore judgment creditors (or any other third party) should have filed a claim before this Court by Monday February 8, 2021.  Yet, to date, neither the Stansell nor the Pescatore judgment creditors have filed a claim in this Court, let alone appeared in this action.  Any claim they might have had is therefore now time-barred. *See Treadwell v. Bischoff*, 2019 Conn. Super. LEXIS 814, No. HHD-CV-17-4085491 at *3 (Conn. Super. Ct. Mar. 22, 2019) (finding that potential claimants to the disputed funds, who had actual notice of the determination of interests proceedings, but who failed to file claims before the deadline and who further failed to appear, waived any potential claims to the disputed property: "They filed no claims, failed to appear at the hearing and ***they are deemed to have waived any claims*** pursuant to Budzik, J.'s order") [emphasis added].

### ii.  The Stansell and Pescatore writs were issued extraterritorially

In addition to failing on procedural grounds (i.e. the potential claims are time-barred), the Stansell and Pescatore judgment creditors' potential claims fail on the merits.  The marshal served Caballero's writ before Stansell and Pescatore served their writs. *Compare* Third-Party Complaint, D.E. 64 at ¶ 19 ("***[O]n December 24, 2020***, the marshal attempted in-person service of the TRO and related papers at the Greenwich, Connecticut headquarters of Interactive Brokers...The marshal states that, also on December 24, 2020, he served the TRO and related papers to Interactive Brokers by U.S. Postal Service priority mail and via e-mail to a compliance address at Interactive Brokers as directed by the security guard at the premises."), *with* ¶ 27 (***On December 29, 2020***, Interactive Brokers accepted service by e-mail of the writs of execution issued by the New York Federal Court relating to the Pescatore Judgment Action and the Stansell Judgment Action.") [emphasis added].

Furthermore, Stansell and Pescatore merely obtained extraterritorial writs from the U.S.

District Court for the Southern District of New York and now try to somehow claim such writs are valid upon the *res* located within the jurisdiction of this Court. *See* D.E. 64 at ¶ 27. Such extraterritorial writs are **invalid, and Interactive Brokers knows it, lest it disregard an entire body of Connecticut law governing attachment of assets within this jurisdiction**. Connecticut law provides that only the court where the *res* is located has the jurisdiction to issue a writ (i.e. the "situs rule").[6] Indeed, multiple jurisdictions follow the situs rule.[7]

Interactive Brokers has already repeatedly represented and confirmed that the blocked Account is located in exclusively Connecticut. D.E. 64 at ¶1. Moreover, as Interactive Brokers points out, Judge Carter of the Southern District of New York has acknowledged that the "District of Connecticut has … jurisdiction over these assets …" *Id.* at ¶ 39. Nevertheless, Interactive Brokers continues to assert baseless concerns of "multiple and inconsistent liability" [*id.* at ¶ 49], despite the fact that only Caballero has met the burden of obtaining a Connecticut-issued writ and only Caballero has properly attached the subject assets in compliance with Connecticut law – first in time over extra-territorial writs no less.[8] Thus, Interactive Brokers' alleged "priority" concerns are simply smoke and mirrors, which have caused (and continue to

---

[6] *See e.g.*, *JPMorgan Chase Bank, N.A. v. Herman*, 175 Conn. App. 662, 663 (2017) ("*When that property is real or tangible personal property within the borders of the enforcing jurisdiction, it is presumptively fair for the judgment creditor to attempt to levy that property, even if the property is the judgment debtor's only connection with the jurisdiction*.") (emphasis added); *Choice Hotels Int'l, Inc. v. Klein*, No. FSTCV114020107, 2011 Conn. Super. LEXIS 2862 (Super. Ct. Nov. 7, 2011).

[7] *See, e.g.*, *Schroeder v. 171.74 Acres of Land*, 318 F.2d 311, 316 (8th Cir. 1963) ("Every state possesses exclusive jurisdiction and sovereignty over property within its territory, and conversely, no state can exercise direct jurisdiction over property outside its territory"); *Quinines v. Pennsylvania General Insurance Co.*, 804 F.2d 1167, 1174 (10th Cir. 1986); *R.F.C. v. Maley*, 125 F.2d 131, 137 (7th Cir. 1942); *Skulas v. Loiselle*, 2010 U.S. Dist. LEXIS 54162, at *6–7 (S.D. Fla. April 9, 2010).

[8] Stansell itself has acknowledged the validity of the in-situs rule. In another case, Stansell withdrew motions for writs filed in the Middle District of Florida to attach bank accounts, and other property, located in the Southern District of Florida. *See* Notice of Withdrawal Without Prejudice of Motion DE 1178 and 1179, *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, No. 8:09-cv-02308-CEH-AAS (M.D. Fla. Feb. 12, 2019). Stansell took action after the court noted that "[a]ll properties that plaintiffs wish to execute or garnish are in the Southern District," and that "[a] federal district court has no jurisdiction over property located outside its territorial borders." Order, *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, No. 8:09-cv-02308-CEH-AAS

cause) prejudice to Caballero, a terrorist victim with a Turnover Order, who continues to wait for satisfaction of judgment.

### c. Alba Petroleos has Failed to Appear and Interactive Brokers has no Standing to Protect Alba Petroleos' Interests

Interactive Brokers admits that "[a]ccording to the marshal's affidavit of service, on December 24, 2020, the marshal served the TRO and related papers to ALBA Petroleos by mail via Global Express." D.E. 64 at ¶ 21.  Indeed, ALBA Petroleos received notice of the TRO and Turnover Order on December 31, 2020 and January 19, 2021 respectively. *Id.*; *see also* Return of Service, D.E. 45; Return of Service, D.E. 55.[9] In its Third-Party Complaint, Interactive Brokers notes that counsel for ALBA Petroleos "has informed Interactive Brokers that it objects to turnover of the Account." D.E. 64 at ¶48.  Yet, despite Caballero's notice, ALBA Petroleos has, even at this late date, not appeared.  As a result, ALBA Petroleos has failed to timely contest the agent and instrumentality determination [D.E. 43].

Interactive Brokers chooses to ignore the reality and mistakenly relies on ALBA Petroleos' supposed "intention" to appear. *See* Opp., D.E. 65 at 11-12. But Caballero should not be prejudiced further (i.e., be denied the turnover of the subject assets, which this Court has ordered) because a sanctioned entity may or may not appear, long after having had notice of these proceedings, and long after having been served on December 24, 2020 by the marshal through mail service received by ALBA Petroleos on December 31, 2020. *See* D.E. 64 at ¶ 21. Yet now, we approach the month of March and the turnover has not been forthcoming as ordered

---

(M.D. Fla. Feb. 7, 2019).

[9] Interactive Brokers has, in the past, implied that Caballero's service of ALBA Petroleos was defective and to the extent it implies as much again herein, such implication is incorrect and is directly refuted by the above. Furthermore, Interactive Brokers has no standing to defend ALBA Petroleos, and such behavior directly contradicts Interactive Brokers' statements that it is a "neutral stakeholder." D.E. 64 at ¶ 3.

by the Court.

Nor is it appropriate for a "neutral stakeholder" to delay turnover and ignore the Order of this Court because a sanctioned entity – who has thus far failed to appear – says it intends to do so.  ALBA Petroleos can make its own decision regarding whether to appear and further should bear the consequences of its decisions.

That Interactive Brokers cannot use ALBA Petroleos' supposed intention to appear as pretext for initiating this interpleader nor as a pretext to delay these proceedings and turnover of the funds in the Account - in direct contravention to this Court's Turnover Order - should be obvious, especially in light of the fact there are no other valid, competing writs.  Interactive Brokers cannot and should not re-start the clock for ALBA Petroleos, which has thus far failed to appear, via initiation of an improper interpleader.  The procedural process under Connecticut law is appropriate, and ALBA Petroleos has failed to avail itself of such process.

## II.   INTERACTIVE BROKERS IS TRYING TO SUPPLANT THE PROPER PROCEDURE PURSUANT TO CONN. GEN. STAT. § 52-356c WITH AN IMPROPER INTERPLEADER

Interactive Brokers acknowledges that it filed a Notice and Claim for Determination of Disputed Property [D.E. 59], thereby initiating proceedings for adjudication of interests pursuant to Connecticut state law – i.e. Conn. Gen. Stat. § 52-356c. D.E. 64 at ¶¶ 34, 36.  It further acknowledges that, upon learning of such filing, the presiding judge over the Stansells' and Pescatores' collection proceedings over the same subject assets – the Honorable Judge Carter – issued an order terminating their turnover motions and stating: "Because the District of Connecticut has, and has exercised, jurisdiction over these assets…this Court declines to rule on the turnover motion related to those assets." *Id.* at ¶ 39.  Yet, somehow, after deafening absence prior to the entry of this Court Turnover Order,  Interactive Brokers has now decided to change

course and initiate an improper statutory and/or Rule 22 interpleader – all to appease the Stansell and Pescatore judgment creditors, who oppose appearing in Connecticut [*id.* at ¶ 39] – while at the same time, feigning that it is a "neutral stakeholder."[10] *Id.* at ¶ 3.

The reality is that the time for statutory and/or Rule 22 interpleader has passed. Caballero already has a Turnover Order and Interactive Brokers has been instructed by this Court to "***forthwith*** turnover to plaintiff's levying officer any account in the name of ALBA Petroleos de El Salvador S.E.M, de C.V. ('the Account') as well as any proceeds of the Account." D.E. 53 at 5 (emphasis added). Interactive Brokers' only recourse is Conn. Gen. Stat. §52-356c.

The only legitimate proceeding is the determination of interest proceeding pursuant to Conn. Gen. Stat. §52-356c.  Interactive Brokers can and has joined the Stansell and Pescatore judgment creditors pursuant to Connecticut law (i.e., Conn. Gen. Stat. §52-356c) and FRCP 20.[11] D.E. 64 at ¶ 36 ("***Interactive Brokers served notice of the Claim for Determination on counsel for…Caballero, the Pescatore Claimants, the Stansell Claimants, and ALBA Petroleos***") [emphasis added].  Although the Stansell and Pescatore creditors have allegedly argued that such statute "cannot force a non-resident competing creditor…to appear in this action" [D.E. 64 at ¶41], such argument misses the point.  Their joinder is appropriate because the Conn. Gen. Stat. §52-356c governs the determination of interests regarding the *res* located in this jurisdiction.

---

[10] Interactive repeats, without any analysis, Stansell's false contention that Caballero's judgment is somehow void. *Id.* at ¶ 33.  If this were true, and it is not, Stansell would never have signed an agreement consenting to Wells Fargo distributing portions of the same blocked assets to Stansell and Caballero just a few months ago.  Stansell's argument is specious and Stansell is without legal standing to make it.

[11] Although FRCP is not explicitly referenced in the Third-Party Complaint in relation to Interactive Brokers' initiation of proceedings under Conn. Gen. Stat. § 52-356c, FRCP 20 was clearly utilized to join the Stansell and Pescatore judgment creditors in conjunction with Conn. Gen. Stat. § 52-356c because of the existence of a common question of law and/or fact (i.e. the alleged competing interests regarding the blocked Account). *See* FRCP 20(a)(2)(B) ("Persons…may be joined in one action as defendants if:….any question of law or fact common to all defendants will arise in the action.").

The Stansell and Pescatore judgment creditors received actual notice of the proceeding and are, therefore, parties to the proceeding pursuant to Conn. Gen. Stat. §52-356c.

Despite being parties to proceedings under Connecticut law, the Stansell and Pescatore judgment creditors, thus far, have attempted to avoid the jurisdiction of this Court in order to not participate in the proceedings.  But the Stansell and Pescatore judgment creditors cannot purposefully avoid the proceedings in the hopes that their interests are not determined in the blocked Account.  Conn. Gen. Stat. §52-356c(g), the statutory section that contemplates non-parties' interests in the proceeding not being extinguished, is not meant for parties purposefully avoiding the jurisdiction in order to prevent their interests from being determined. *Id.* ("This section does not affect any interest in property of any person who is not a party to a determination pursuant to the provisions of this section.").  The statutory section is meant for parties that have no knowledge of the proceeding, else parties such as the Stansell and Pescatore judgment creditors would be able to hold the proceedings hostage and prevent a proper determination of interests by claiming that their interests have not been addressed, thus leaving the participants in the proceeding without proper recourse to have their interests finally determined as contemplated by the statute.

In *Treadwell,* the court concluded that potential claimants to the disputed funds, who had actual notice of the determination of interests proceedings, but who failed to file claims before the deadline and who further failed to appear, waived any potential claims to the disputed property: "They filed no claims, failed to appear at the hearing and ***they are deemed to have waived any claims*** pursuant to Budzik, J.'s order." *See Treadwell v. Bischoff*, 2019 Conn. Super. LEXIS 814, at *2-3 (emphasis added).  The court further granted a turnover application and determined the interests, including the interests of non-appearing potential claimants, in the

- 12 -

disputed funds: "***As between the parties noticed for the hearing***, judgment debtor Genesis has a 100% interest in the debt memorialized by the demand notes.  **Bischoff, KS, BB, MR have no interest in any of the demand notes**." *Id.* at *5 [emphasis added].

Thus, whether the Stansell and Pescatore judgment creditors waive their right to appear in this jurisdiction to defend their alleged interests is their choice. Put another way, Interactive Brokers need not and should not forgo the appropriate procedure for adjudication of competing interests (i.e., pursuant to Conn. Gen. Stat. §52-356c) for an improper statutory and/or Rule 22 interpleader, for the purpose of appeasing the Stansell and Pescatore judgment creditors, who cannot be bothered to appear in this jurisdiction to defend their alleged interests.  Nor should it do so for ALBA Petroleos, which also has failed to appear in this action.

Interactive Brokers has itself admitted that: "***to the extent any of the Judgment Creditors and ALBA Petroleos fails to appear* to assert a defense to execution or a claim to the Account**, *the Court may adjudicate and issue final judgment* on all issues bearing on the rights of any defaulting party *with respect to the Account*" and that "***to the extent any individuals notified of these proceedings fail to appear* in response to such notice to assert a defense to execution, _or to assert a claim to the Account, the Court may adjudicate and issue final judgment_ on all issues bearing on the rights of any absent adverse claimants *with respect to the Account*." *Id.* at ¶¶52-53 (emphasis added).  Such logic (i.e. that the Court may adjudicate and issue final judgment on all issues bearing on the rights of any defaulting party and/or absent adverse claimants with respect to the Account) should and does apply to the proceedings for adjudication of interests pursuant Conn. Gen. Stat. §52-356c.  And because the alleged adverse claimants, aside from Caballero, have failed to appear, no further hearing with respect to the Stansell and

Pescatore Judgment Creditors and ALBA Petroleos is necessary.  Indeed, all that is left is for Interactive Brokers to comply with Caballero's Turnover Order.

## III.   INTERACTIVE BROKERS' THIRD-PARTY COMPLAINT IS PROCEDURALLY IMPROPER AND SUPERFLUOUS

As discussed above, Conn. Gen. Stat. §52-356c is the proper vehicle for the determination of interests in the blocked Account.  Interactive Brokers' Third-Party Complaint is therefore superfluous.  Moreover, it is procedurally improper under the applicable federal rules of civil procedure.

### a.   A "Third-Party Complaint" Cannot be Brought Under FRCP 22

Rule 22(a)(2) provides that: "***A defendant*** exposed to similar liability may seek interpleader ***through a crossclaim or counterclaim***." [emphasis added]. Rule 22(b) further provides that Rule 22 "supplements—and does not limit—the joinder of parties allowed by Rule 20."  Interactive Brokers is not a "defendant" as required under Rule 22.  It is a garnishee.  Furthermore, assuming arguendo that Interactive Brokers is a "defendant" (and it is not), Rule 22 merely provides that Interactive Brokers could bring a "crossclaim" or "counterclaim" against an existing plaintiff or defendant, respectively.  Rule 22 does not authorize Interactive Brokers to bring a third-party complaint. *See* Order, *Stansell, et al., v. FARC, et al.,* No. 16-mc-00405-ALC (S.D.N.Y. Jan. 27, 2021), D.E. 160 (striking a garnishee's third-party complaint and directing the garnishee to bring interpleader through crossclaims or counterclaims in its answer to the plaintiff's post-judgment application for writ: "[P]ursuant to Fed. R. Civ. P. 22, [garnishee] may not seek relief in the nature of interpleader by filing a third-party complaint." (citing Fed. R. Civ. P. 22(a)(2) and Fed. R. Civ. P. 14(a)(1))).

Moreover, although Rule 22 allows for the joinder of additional defendants via Rule 20, Rule 20 also does not authorize Interactive Brokers to bring a third-party complaint.  At best,

- 14 -

Rule 22 authorized Interactive Brokers to bring a "crossclaim" and/or "counterclaim." Interactive Brokers failed to do so and, in any case, would have been superfluous given the proceedings underway pursuant to Conn. Gen. Stat. §52-356c. *See* Section IV, *infra.* The Third-Party Complaint is therefore improper and should be dismissed.

### b. Interactive Brokers Fails to Meet the Requirements for Bringing a "Third-Party Complaint" Under FRCP 14

FRCP 14(a)(1) is explicit.  Only a "defending party" may bring a third-party complaint, and such "defending party" may only bring in "a nonparty who is or may be liable to it":

> *Timing of the Summons and Complaint.* A ***defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it*** *for all or part of the claim against it.* But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer. [emphasis added]

Courts interpreting FRCP 14(a)(1) have made clear that in order to properly implead a non-party, the defendant must allege that the non-parties' liability is dependent on or derivative of the underlying claim against the defendant:

> It is well-settled that a third-party action, also known as an impleader action, "must be dependent on, or derivative of, the main . . . claim." *Bank Of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir.2000). ***The Second Circuit has explained that a defending party may assert a third party claim when either (1) the third party's liability is "dependent upon the outcome of the main claim" or (2) the third party  is "potentially secondarily liable as a contributor to the defendant."*** *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29. 31 (2d Cir. 1984). *See also Siemens Westinghouse Power Corp. v. Dick Corp*, 299 F. Supp. 2d 242, 248 (S.D.N.Y. 2004) ("***The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff.*** In other words, the outcome of the third-party claim must be contingent on the outcome of the main claim[.]") (internal quotations and citations omitted); 6 Charles Alan Wright & Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1446, at 377 (3d ed.) ("A third-party claim may be asserted under Rule 14(a)(1) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defending party.").

> ***Generally, the traditional grounds for a third-party action are indemnification, contribution, or subrogation***. *Doucette v. Vibe Records, Inc.*, 233 F.R.D. 117, 120 (E.D.N.Y. 2005). *See also* Federal Practice and Procedure § 1446 ("The secondary or derivative liability notion  is central," such that impleader is often successfully used "when the basis of the third-party claim is indemnity."). "***A third-party complaint is a narrow device and cannot be used to bring in other matters that may have some relationship to the case***." *Doucette* , 233 F.R.D. at 120.

*Kyser v. Conn. S. R.R.,* No. 13-cv-86(CSH), 2013 U.S. Dist. LEXIS 93804, at *16-18, *23 (D. Ct. July 3, 2013) [emphasis added] (denying motion for leave to file third-party complaint); *see also Wilson v. Home Depot U.S.A.,* No. 11-cv-1000(SRU), 2012 U.S. Dist. LEXIS 1060154, at *4 (D. Ct. Nov. 8, 2012) (denying motion for leave to file third-party complaint: "Home Depot has no colorable claim against CRST for contribution or indemnification, and impleader is inappropriate").

Furthermore, the language of FRCP 14(a)(4) indicates that the utilization of third-party complaints is contemplated in the pre-judgment context only: "Any party may move to strike the third-party claim, to sever it, ***or to try it separately***." Emphasis added; *see also* FRCP 14(a)(1) ("the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint ***more than 14 days after serving its original answer***"). Thus, a third-party complaint cannot be brought post-judgment.

Based on the explicit language of FRCP 14 referenced above, it is evident that Interactive Brokers' Third-Party Complaint is procedurally improper for at least **four** independent reasons. To begin with, Interactive Brokers is not a "defending party" to this action, but rather a garnishee.  Moreover, the Stansell and Pescatore judgment creditors have already been joined to this action pursuant to Conn. Gen. Stat. §52-356c and FRCP 20 (*see* Section II, *supra*), thus they are not "non-parties" as required by the FRCP 14.

- 16 -

And even if the Stansell and Pescatore judgment creditors were "non-parties" (and they are not), Interactive Brokers states no claim of dependent or derivate liability against them. Put another way, Stansell and Pescatore cannot "be liable" to Interactive Brokers as required under FRCP 14. Indeed, the purpose of Interactive Broker' Third-Party Complaint is to adjudicate the interests of the alleged adverse claimants – not to shift liability from Interactive Brokers to the Stansell and Pescatore judgment creditors or anyone else. Such purpose therefore does not serve the goal of third-party complaints under FRCP 14, but rather procedures meant to determine the rights of adverse claimants such as Conn. Gen. Stat. §52-356c (which Interactive Brokers was entitled to bring and did bring) and Rule 22 interpleader (which Interactive Brokers is not authorized to utilize). *See Tetra Tech EC/Tesoro Joint Venture v. Sam Temples Masonry, Inc.,* No. 10-cv-1597-CMC, 2011 U.S. Dist. LEXIS 29462, at *9-10 (D.S.C. Mar. 21, 2011) ("The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against defendant by the original plaintiff. ***The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough. In this connection, impleader under Rule 14(a) should not be confused with interpleader under Rule 22***." (quoting Wright, Miller, Kane and Marcus, 6 Federal Practice and Procedure Civil §1446)) (emphasis added); *In re Manbodh Asbestos Litigation Series,* 69 V.I. 394, 446 (V.I. Super. Ct. St. Croix Div. Oct. 17, 2018) (same).

Finally, third-party complaints are not authorized in a post-judgment proceeding such as this one. Caballero has already obtained a final judgment from the Southern District of Florida and, in fact, has already obtained a Turnover Order from this Court. Thus, Caballero respectfully requests that this Court dismiss this improper Third-Party Complaint. Furthermore, because Interactive Brokers' Third-Party Complaint goes beyond mere mislabeling of a pleading or

- 17 -

similar technical error, Caballero requests that such dismissal be with prejudice and that the Court reject Interactive Brokers attempt to "reserve its right to amend this pleading and to supplement the record on any issue in this matter." D.E. 64 at § 43.

## IV.     INTERACTIVE BROKERS FAILS TO RAISE ANY COUNTERCLAIMS

Despite titling its pleading "Interactive Brokers LLC's **Counterclaims** and Third-Party Complaint" and stating that it "hereby asserts counterclaims," Interactive Brokers fails to set forth a single counterclaim in its pleading. D.E. 64 at 2 [emphasis added].  With nothing to respond to, Caballero need not devote any more ink to this section.  Interactive Brokers' counterclaims, whatever they may be, should be dismissed with prejudice.

## CONCLUSION

Only Caballero has attached the subject blocked assets because only Caballero has a writ issued out of Connecticut. Nevertheless, the Stansell and Pescatore creditors have been made parties to defend their alleged interests pursuant to Conn. Gen. State. §52-356c. They have chosen not to appear. And, because ALBA Petroleos has failed to appear, despite notice, there is no need for a hearing to adjudicate interests – let alone any interpleader. At this stage, there are no competing interests.  Thus, Caballero respectfully requests that this Court dismiss, *with prejudice*, Interactive Brokers' Third-Party Complaint and counterclaims as superfluous.

Houston Putnam Lowry, Esq.
Counsel for Plaintiff Antonio Caballero
FORD & PAULEKAS, LLP
280 Trumbull Street - Suite 2200
Hartford, CT 06103
Direct: (860) 808-4213
Mobile: (860) 543-4372
Fax: (860) 249-7500
Email: PTL@HPLowry.com
Federal Bar # CT05955

Joseph I. Zumpano, Esq., PHV10932
E-mail address: jzumpano@zplaw.com
Leon N. Patricios, Esq., PHV10931
E-mail address: lpatricios@zplaw.com
Counsel for Plaintiff Antonio Caballero
ZUMPANO PATRICIOS, P.A.
312 Minorca Avenue
Coral Gables, FL 33134
Telephone: (305) 444-5565

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with the ECF/CM system on this 26th day of February 2021, which then distributed it to all parties of record and I further sent copies to the following as indicated:

Juvenal Ovidio Ricardo Palmera Pineda
a/k/a Simon Trinidad
BOP Register No. 27896-016
USP Florence ADMAX
U.S. Penitentiary
P.O. Box 8500
Florence, CO 81226

Norte De Valle Cartel
Diego Leon Montoya Sanchez
BOP Register No. 04171-748
FCI Petersburg Medium
Federal Correctional Institution
P.O. Box 1000
Petersburg, VA  23804

Newton Porter, Esq.
Porter & Korvick, P.A.
9655 S. Dixie Highway, Suite 208
Miami, FL 33156
**VIA EMAIL ONLY - nporter@porterandkorvick.com**

Tony Korvick, Esq.
Porter & Korvick, P.A.
9655 S. Dixie Highway, Suite 208
Miami, FL 33156
**VIA EMAIL ONLY - tkorvick@porterandkorvick.com**

Nathanial A. Tarnor, Esq.
Hagens Berman Sobol Shapiro LLP
322 8th Avenue-Suite 802
New York, New York 10001
**VIA EMAIL ONLY - nathant@hbsslaw.com**

ALBA Petroleos de El Salvador S.E.M. de C.V.
Boulevard Orden de Malta Sur
Block "A", Casa número 1
Urbanización Santa Elena
Parque Industrial El Boquerón
Antiguo Cuscatlán, La Libertad.
El Salvador

Houston Putnam Lowry, Esq.