## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTONIO CABALLERO, | Civil Action No.: 3:20-cv-01939-JAM |
| Plaintiff, | |
| vs. | APRIL 7, 2021 |
| REVOLUTIONARY ARMED FORCES OF COLOMBIA—PEOPLE'S ARMY A/K/A FUERZAS ARMADAS REVOLUCIONARIAS DE COLOMBIA—EJÉRCITO DEL PUEBLO, AND NORTE DE VALLE CARTEL, | |
| Defendants. | |

## ANTONIO CABALLERO'S MEMORANDUM IN OPPOSITION TO
## ALBA PETROLEOS DE EL SALVADOR S.E.M. DE C.V.'S MOTION TO INTERVENE

Pursuant to Local Rule 7, Plaintiff Antonio Caballero ("Caballero") hereby submits his Memorandum in Opposition to ALBA Petroleos de El Salvador S.E.M. de C.V.'s ("ALBA Petroleos") Motion to Intervene (the "Motion") [D.E. 90], dated March 17, 2021, which requests that the Court: (i) allow ALBA Petroleos to intervene, and (ii) stay and set aside its January 14, 2021 Turnover Order [D.E. 53], finding that ALBA Petroleos is an agent or instrumentality of the FARC[1] and granting Caballero's ex parte application for turnover order. Herein, we explain why the Court should not grant ALBA Petroleos any of the relief it seeks and why ALBA Petroleos' appearance should not alter a victim of terror's rights (i.e., Caballero's rights) to satisfy his judgment, in part, from assets blocked by the United States government.

---

[1] "FARC" refers to the Fuerzas Armadas Revolucionarias de Colombia, A/K/A FARC-EP A/K/A Revolutionary Armed Forces of Colombia.

**ORAL ARGUMENT REQUESTED**

## I. Overview

ALBA Petroleos seeks to raise vaguely described "jurisdictional" defenses and also asks for the opportunity to challenge this Court's correct prior determination, in line with the rulings of several other courts, that ALBA Petroleos is an agent or instrumentality of the FARC. *See* Motion at n. 1, 2, 7, 8, 10-3. This Court should not allow ALBA Petroleos to avoid the jurisdiction of this Court while, at the same time, ask this Court to make a substantive determination that it is not an agent and instrumentality of the FARC. Put another way, unless ALBA Petroleos immediately consents to the personal jurisdiction of this Court and agrees that this Court is an appropriate venue for depositions and other discovery, if necessary, to occur, this Court should enforce the turnover of the blocked accounts to Caballero. As discussed below, it is black letter law that a party seeking intervention consents to the personal jurisdiction of the Court and waives any arguments to venue.

Nearly two years ago, Petroleos de Venezuela, S.A.[2] ("PdVSA") abandoned its efforts in Caballero's original state court action to challenge Caballero's mountain of evidence that PdVSA is an agent and instrumentality of the FARC. Recently, PdVSA has appeared in other cases of Caballero attempting to challenge its agent and instrumentality determination. *See* Motion at Exhibits 1 and 2.

In this case, in accordance with this Court's December 23, 2020 Temporary Restraining Order Freezing Account Pending Hearing on Application for Turnover Order (the "TRO") [D.E. 43], on December 31, 2020, ALBA Petroleos received notice of the Court's TRO to its address

---

[2] ALBA Petroleos is "60% owned by Petroleos de Venezuela Caribe, S.A., which in turn is 100% owned by Petroleos de Venezuela America, S.A., which in turn is 100% owned by Petroleos de Venezuela S.A." ALBA Petroleos' Rule 7.1. Disclosure Statement, D.E. 91.

in El Salvador. *See* Affidavit of Service by Connecticut State Marshal, D.E. 45 at 2. Yet, PdVSA's and/or ALBA Petroleos' counsel did not contact counsel for Caballero, did not in any way inform counsel for Caballero that they were representing ALBA Petroleos in this action, and waited over three months to file its Motion (i.e. ALBA Petroleos filed its Motion on March 17, 2021). Consequently, ALBA Petroleos failure to file an appearance or objection to Caballero's application for turnover order before January 5, 2021, resulted in the Court's issuance of the Turnover Order [D.E. 53] on January 14, 2021. On January 19, 2021, ALBA Petroleos received notice of the Turnover Order at its address in El Salvador. *See* Affidavit of Service by Connecticut State Marshal, D.E. 55 at 1. It is inequitable to the victim of terror to allow an entity sanctioned by the United States government (i.e., PdVSA) to play games with the United States Court system – avoiding its jurisdiction and filing untimely and inappropriate attacks on final orders and judgments when they received prior notice, not only from Caballero, but presumably directly from the Garnishee.

We also address the absurd argument that Caballero is "hiding" behind the Terrorism Risk Insurance Act of 2002 ("TRIA") – a terrorist victim recovery maximization statute and that Caballero's proof, including submissions of a former expert not used before this Court (but routinely used by United States law enforcement), is somehow deficient. *See* Motion at 2, 5. Caballero's proof is ample, and ALBA Petroleos has not submitted a single pleading, an affidavit, or a scintilla of evidence rebutting the findings of the United States government, John Robert McBrien, and others. Indeed, ALBA Petroleos' failure to file a "pleading that sets out the claim or defense for which intervention is sought" is in direct violation of Rule 24(c) of the Federal Rules of Civil Procedure, which provides that ALBA Petroleos "must" accompany its motion to intervene with such a pleading.

As explained below, other Courts have rightfully denied stays of executions when faced with intervenors who have nothing but bald assertions to support their position. Caballero respectfully asks that the Court do the same here and enforce turnover and give the blocked accounts to Caballero.

## II. Procedural History

### A. The Florida State Court Action

In December 2012, Caballero commenced an action in Florida state court against the FARC, NDVC, and the Ejercito de Liberacion Nacional ("ELN") under various theories of recovery, including the Alien Tort Statute (hereinafter referred to as the "ATS Action"). After the defendants failed to appear and defaults were entered, the Florida trial court held a trial on damages and also requested and received briefing on Caballero's request that the final judgment against the defendants also name agents or instrumentalities of the Defendants so that Caballero could proceed to collect his final judgment from such agents or instrumentalities under TRIA. *See* Appellate Brief filed in ATS Action at D.E. 15-3, at 11-13, *Caballero v. FARC et al.*, Case No. 19-cv-04011-KES (D. S.D.).

On November 18, 2014, the Florida trial court entered a 274-page final judgment against the Defendants and also included findings regarding agents and instrumentalities listed on approximately 175 pages of exhibits to the final judgment. *See* ATS Final Judgment at D.E. 1-1, *Caballero v. FARC, et al.*, Case No. 18-cv-25337-Moore (S.D. Fla.).  PdVSA and ALBA Petroleos were not included in ATS Action final judgment as an agent or instrumentality of any of the defendants. Caballero's collection efforts on his ATS judgment proceeded for several years in the Florida state court and in other courts. On April 11, 2019, Caballero filed a motion in his ATS Action for the Court to determine that PdVSA was an agent or instrumentality of the

FARC. Caballero supported his motion with the affidavit of Bruce Bagley, a renowned expert used by many law enforcement agencies of the United States when prosecuting narco-terrorists. Caballero addresses ALBA Petroleos' attack on Dr. Bagley below, but first explains how PdVSA moved to intervene in the ATS Action and then abandoned its challenge of Caballero's assertion that it is an agent or instrumentality of the FARC.

Prior to a scheduled hearing on Caballero's motion, PdVSA, through counsel, appeared in the ATS Action, and on May 24, 2019, attempted to remove the motion to federal court. *See Caballero v. FARC et al.*, 19-cv-22143-RNS (S.D. Fla.). Within days of PdVSA's removal and without the filing of any motion by Caballero, Judge Scola of the United States District Court for the Southern District of Florida remanded PdVSA back to state court finding that PdVSA's removal of a motion for determination was not proper as it was not even a party to the ATS Action. *See* June 6, 2019 Order, (D.E. 3), *Caballero v. FARC et al.*, 19-cv-22143-RNS (S.D. Fla.). Upon remand, PdVSA moved to intervene in the ATS Action[3] making many of the very same arguments it now makes to this Court. It immediately set a hearing on its Motion to Intervene, and then in consultation with counsel for Caballero on July 18, 2019, cancelled the hearing due to a Judge not being assigned to the division in which the case was pending. *See* Exhibit 2 hereto. PdVSA took no further action in the ATS Action and its motion remains pending, and undecided, in the ATS Action. This was clearly PdVSA's opportunity to challenge Caballero's allegations, but PdVSA abandoned its efforts, and undersigned counsel did not hear again from counsel for PdVSA for over one and half years.

On January 28, 2019, the United States government itself sanctioned PdVSA and

---

[3] *See* Exhibit 1 hereto.

designated it as a blocked party.  Thus, it is understandable why the lawyers for PdVSA

disappeared and, in light of the actions of the United States government, abandoned PdVSA's

motion to intervene and arguments on it being an agent or instrumentality of FARC and did not

participate further in any way in any case involving Caballero.

We turn briefly to PdVSA's irrelevant attack on Dr. Bruce Bagley. *See* Motion at 3. As

explained to the District Court of South Dakota,[4] wherein another party attempted to attack Dr.

Bagley as PdVSA does here, Dr. Bagley was the foremost experts on counter-narcotics efforts

and money laundering whose expertise had been sought by many, including the United Nations,

the F.B.I., the Drug Enforcement Administration, members of the U.S. Congress, and several

Latin American governments such as the governments of Colombia, Ecuador, Bolivia, Panama,

and Mexico.[5] Dr. Bagley has also served as an expert witness for high-profile trials, including

most recently on behalf of Johnson & Johnson, which was being sued for its role in the opioid

crisis.[6] He also regularly appeared in the media, for example, in The Washington Post about

cocaine trafficking in Panama as a "University of Miami money laundering specialist."[7] And,

---

[4] *See Wells Fargo, N.A. v. Caballero, et al.*, Case No. 19-cv-04141-KES (D. S.D.), D.E. 71-1.

[5] *See* Michael Gold, *Professor Who Is Corruption Expert Accused on Laundering $2.5 Million*, THE NEW YORK TIMES, https://www.nytimes.com/2019/11/18/nyregion/bruce-bagley-money-laundering-venezuela.html (last visited Nov. 22, 2019) (citing https://maia.as.miami.edu/_assets/pdf/changing-landscape-of-international-security-2018.pdf); *See also* Vanessa Romo, *U.S. Arrests Money-Laundering Expert For Laundering Money*, NPR, https://www.npr.org/2019/11/19/780877837/u-s-arrests-money-laundering-expert-for-laundering-money (last visited Nov. 22, 2019); *See also* Antonio Noori Farzan, *He Was the Go-To Expert on Money Laundering. Now He's Been Charged With Laundering Money*, https://www.washingtonpost.com/nation/2019/11/19/bruce-bagley-money-laundering-university-miami-expert/ (last visited Nov. 22, 2019).

[6] *See* Vanessa Romo, *supra* note 5.

[7] *See* Antonio Noori Farzan, *supra* note 5.

news outlets, including the New York Times and NPR, sought out his thoughts on topics related to drug trafficking overseas.[8] After Dr. Bagley was arrested, John Robert McBrien, who had been in charge of the designations programs of the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") for more than 24 years, whose sworn declarations have been presented to this Court, reviewed Dr. Bagley's affidavits submitted in the South Dakota action and found them to be correct.

### B. The Federal Court Action

On October 3, 2018, the ATA was clarified to allow holders of ATA judgments (but not ATS judgments) to collect under TRIA from the blocked assets of Specially Designated Narcotics Trafficking Kingpins ("SDNTK") whose assets were not previously available to holders of either ATS or ATA judgments. After he obtained his final judgment in the ATS Action, Caballero became a United States citizen and thereafter proceeded in federal court to obtain his ATA judgment that would allow him to satisfy his judgment from the putative assets of agents or instrumentalities blocked as SDNTKs. Caballero filed his action on December 19, 2018 in the United States District Court for the Southern District of Florida. After Caballero was able to satisfy the Court that he had served FARC and NDVC, Caballero dropped ELN as a defendant (because he was not able to serve it) and requested that the Court enter judgment against the FARC and NDVC. Caballero was not required to add PdVSA, or any other agent or instrumentality of the FARC, as a party to the action.

As this Court is familiar from the record in this action, Chief Judge Moore entered the ATA Final Judgment on May 20, 2020. *See* ATA Final Judgment, *Caballero v. FARC, et al.*, Case No. 1:18-cv-25337-KMM (S.D. Fla. Mat 20, 2020), D.E. 63. Caballero has domesticated

---

[8] *Id.*

his ATA Final Judgment before this Court [*see* D.E. 1-1] and several other courts and has

obtained several agent or instrumentality rulings against various parties, including PdVSA and/or

ALBA Petroleos.[9]

### III. Memorandum of Law

**A.      Alba Petroleos has Consented to the Jurisdiction of the Court**

It is nonsensical that ALBA Petroleos seeks to intervene in this action, but at the same

time refuses to acknowledge that this Court has jurisdiction over it or the subject matter of this

case, and that venue is proper.  By voluntarily seeking intervention and to be made a party to this

case in order to protect its alleged interest in an asset located within this Court's jurisdiction, it

follows that it must submit to the jurisdiction of this Court, and thereafter comply within this

District with any discovery requests (if necessary) served by Caballero, and appear in person for

any evidentiary hearing (should this Court decide to hold one).

That ALBA Petroleos seeks to raise vaguely described "jurisdictional issues" is an

anathema to asking this Court for substantive relief. It cannot contest jurisdiction over it and

seek, at the same time, to reap the benefits of this jurisdiction's legal system and financial sector

without accepting the corresponding obligations.

That ALBA Petroleos seeks to play games and avoid this Court's powers over it is further

exemplified in its submissions to this Court.  In fact, in its motion to intervene, ALBA Petroleos

repeatedly notes that it is "seeking limited intervention" (Motion at n.1), "does not waive and

specifically reserves all jurisdictional defenses" (*id*.), "PDVSA is first entitled to assert all

jurisdictional defenses to Plaintiff's TRIA enforcement action against PDVSA and PDVSA's

---

[9] *See e.g.,* D.E. 31, 43.

purported asset" (*id.* at 10).

So why does ALBA Petroleos seek to avoid this Court's jurisdiction? Put simply, because it is owned and/or controlled 50% or more by PdVSA—a sanctioned organization owned by individuals and/or entities who have also been sanctioned (and some indicted) by the United States. Therefore, neither ALBA Petroleos nor its officers wish to appear in the United States while at the same time seeking to avail themselves of the protection of the United States courts and the United States financial system.

Fortunately, case law is clear that ALBA Petroleos' improper attempts to outmaneuver this Court's legal system and U.S. sanctions law are simply impermissible. By voluntarily seeking intervention and to be made a party to this case, it follows that ALBA Petroleos must fully submit – at the very least – to the personal jurisdiction of this Court and to venue. The Second Circuit has ruled simply that "[v]enue is a privilege personal to a defendant in a civil suit and ***a person intervening on either side of the controversy may not object to improper venue***." *Trans World Airlines, Inc. v. C.A.B.*, 339 F.2d 56, 63-64 (2d Cir. 1964) [emphasis added].

Other circuit courts concur. *Bayshore Ford Trucks Sales, Inc. v. Ford Motor Co. (In re Ford Motor Co.)*, 471 F.3d 1233, 1248 (11th Cir. 2006) ("Westgate challenges the district court's jurisdiction over its person, ***but by filing a successful motion to intervene, it acquiesced to such jurisdiction***.") (citations omitted) [emphasis added]; *id.* ("Whereas it would not have been the case absent intervention, *Westgate **willingly submitted to the personal jurisdiction of the district court**…*") (citations omitted) [emphasis added]; see also *Cty. Sec. Agency v. Ohio DOC*, 296 F.3d 477, 483 (6th Cir. 2002) ("Betzold attempted in his motion to intervene to reserve his right to object to the district court's exercise of personal jurisdiction. This attempt, however, was unsuccessful, because ***a motion to intervene is fundamentally incompatible with***

*an objection to personal jurisdiction*.") (citations omitted) [emphasis added]; *United States v. Oregon*, 657 F.2d 1009, 1017 n. 18 (9th Cir. 1981) ("*the court below gained personal jurisdiction over [the applicant] when it intervened*…") [emphasis added].

 As expected, district courts have held the same. *See e.g.*, *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, 287 F. Supp. 3d 651, 659-661 (E.D. Tex. 2018) *("[T]he Supreme Court has held that intervenors cannot question venue*, where a defendant has not exercised that privilege." [emphasis added] (citing *Cent. Trust Co. v. McGeorge*, 151 U.S. 129 (1894))) and such principal is echoed in other authorities. *See* 7C Wright, Miller & Kane, supra, § 1920, at 490 ("*[T]he intervenor submits himself to the personal jurisdiction* of the court by seeking to intervene in the action and cannot move to dismiss on that ground.") [emphasis added]; Wright and Miller, 7C Fed. Prac. & Proc. Civ. § 1918 (3d ed.) ("*The intervenor cannot question venue*. By voluntarily entering the action the intervenor has waived the privilege not to be required to engage in litigation in that forum.") [emphasis added]; Moore's Federal Practice, § 24.22[3] (3d Ed.) ("*A person who intervenes as plaintiff or defendant may not object to the venue* chosen for the action. Since the intervenor specifically invoked the jurisdiction of the court, any potential venue objections are considered waived.") [emphasis added].

 In its papers, ALBA Petroleos ignores all of the above law. Instead, it cites to one opinion of a district court. *See* Motion at n.1 (citing *Pescatore v. Palmera Pineda*, No. 08-2245 (RMC), 2019 WL 2173855 at *3-4 (D.D.C. May 20, 2019). However, such opinion does not support ALBA Petroleos' tactics herein of avoiding personal jurisdiction. Indeed, unlike ALBA Petroleos, the *Pescatore* intervenor did not contest the Court's personal jurisdiction over it. Rather, the intervenor sought to reserve its right to challenge the subject matter jurisdiction and venue of the Court. The plaintiffs sought denial of the motion to intervene on that ground alone,

and the Court rejected plaintiff's argument noting that it would decide its own subject matter jurisdiction. Thus, even if this Court were to grant ALBA Petroleos intervention and allow it to reserve objections regarding subject matter jurisdiction and venue (and it should not given the overwhelming case law on venue noted above), ALBA Petroleos will have subjected itself to the personal jurisdiction of this Court and therefore must fully participate in the discovery process should it raise any factual issues for this Court's determination (and it has not) that it is an agent or instrumentality of the FARC.  *See Fujikura Ltd. v. Finisar Corp.*, No. 15-mc-80110-HRL (JSC), 2015 U.S. Dist. LEXIS 135871, at *10 (N.D. Cal. May 14, 2015) ("Once a party has intervened, it is subject to discovery obligations under Rules 30 and 34 just like a party.").

**B. Alba Petroleos was not Entitled to Notice Pre-Attachment**

Threaded throughout Alba Petroleos' motion to intervene are aspersions that Caballero never made any attempt to provide notice to ALBA Petroleos nor its counsel of Caballero's enforcement actions. *See* Motion at 2, 6-7, 9. But, the case law is clear that an agent an instrumentality is not entitled to notice pre-attachment.  *Stansell v. Revolutionary Armed Forces of Columbia [sic]* – a seminal case in terror law – clearly disposes of the flawed premise upon which ALBA Petroleos' notice argument is based. *Id.,* 771 F.3d 713, 729 (11th Cir. 2014) ("Because the factors weigh in favor of immediate attachment, Claimants were not constitutionally entitled to a hearing before the writ issued. In sum, ***Claimants were entitled to notice and to be heard before execution, <u>though not necessarily before attachment.</u>***") [emphasis added].

The Eleventh Circuit's rationale for not providing claimants with notice pre-attachment is sound. There are various real and significant risks with informing a terrorist that his/her/its assets are being attached:

During the pendency of execution proceedings, a number of events may occur which make satisfaction using a particular asset impossible. ***Other judgment creditors may seek to execute against the asset. The government may take action that makes the asset unreachable, including seizure or de-listing of the alleged agency or instrumentality (which may or may not be the result of a finding that the SDNT designation was incorrectly reached), the latter of which would enable the asset owner to move the asset (or proceeds from its sale) outside the reach of any United States district court.***

*Id.* [emphasis added].

Significantly, *Stansell* does provide claimants with an opportunity to be heard – *i.e.*, after attachment, but before turnover. Consistent with *Stansell,* ALBA Petroleos received notice of the TRO [D.E. 43] on December 31, 2020. *See* Affidavit of Service by Connecticut State Marshal, D.E. 45 at 2. Notably, nowhere in its Motion, does ALBA Petroleos assert that it was not served with the TRO.  Pursuant to the TRO, ALBA Petroleos was required to file an appearance of counsel and written objections to Caballero's application for turnover order on or before January 5, 2021. *See* TRO, D.E. 43 at ¶ 2. The TRO provides that "if a timely objection is filed, the court will enter a scheduling order at the hearing on January 7, 2021…[i]f no written objection is filed, the application will be decided on the papers submitted by Plaintiff [Caballero]." *Id*. Yet, despite Caballero's notice, ALBA Petroleos never appeared to file an objection on or before January 5, 2021. Instead, ALBA Petroleos deceptively asserts that "Plaintiff failed to provide notice to undersigned lead counsel despite knowing that he represented PDVSA" – even though, as previously discussed, Caballero had no obligation to do so. *See* D.E. 90-1 at 6. Nonsense. It is absurd to ague conversely of a duty to notify counsel when he was not admitted in this jurisdiction and never professed to represent ALBA Petroleos in this case. Thus, ALBA Petroleos received notice of this action at the proper time.

Given such behavior, it is simply inequitable to stay the Turnover Order or allow it to be challenged. ALBA Petroleos' remedy, if any, was to file a notice of appeal within thirty days of

the Turnover Order.  Notably, intervention after final judgment "is unusual and is granted only upon a showing of compelling need." *Crown Financial Corp. v. Winthrop Lawrence Corp.*, 531 F.2d 76, 77 (2d Cir. 1976). Given PdVSA's prior abandonment of a challenge to an agent or instrumentality determination, and ALBA Petroleos' actual notice of Caballero's application for a turnover order ***prior to*** this Court's hearing on January 7, 2021 and subsequent entry of the Turnover Order, ALBA Petroleos has not and cannot show any compelling need. Moreover, allowing it to intervene after Caballero took all the appropriate steps to notify ALBA Petroleos (as did apparently the Garnishee), Caballero is being prejudiced by the entry of the stay of the Turnover Order and ALBA Petroloes' request that this case "start over." As one court has noted, "intervention after final judgment is disfavored precisely because by its very nature 'it fosters delay and prejudice to existing parties.'" *See Lasala v. Needham & Co.*, No. 04 civ. 9237 (SAS), 2006 U.S. Dist. LEXIS 25882, at *26-27 (S.D.N.Y. Apr. 28, 2006).

### C. Alba Petroleos has Failed to Provide this Court with Any Valid Reason to Continue to Stay this Action

The Federal Rules of Civil Procedure are explicit. A party seeking intervention "must" provide with its motion to intervene a "pleading that sets out the claim or defense for which intervention is sought." *See* Fed. R. Civ. P. 24(c). The obligation is on ALBA Petroleos to set out its claim or defense – yet it has failed to do so. Many courts have denied intervention due to the failure of a proposed intervenor to properly do so. *Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759, 760 (2d Cir. 1968) (affirming dismissal because the motion to intervene "was not accompanied by a pleading as required by Rule 24(c) of the Federal Rules of Civil Procedure."); *Caron v. TD Ameritrade*, Case No. 19-cv-9015 (AJN), 2020 U.S. Dist. Lexis 223310 at *27 (S.D.N.Y, Nov. 30, 2020) (rejecting motion to intervene that did not "actually state any claim or defense, nor . . . attach[ed] a formal pleading as required under the rule.").

ALBA Petroleos vaguely mentions "jurisdictional defenses" but does not explain them in any way nor provide any support as is required by Rule 24(c). Likewise, ALBA Petroleos acknowledges that it has read the submissions of John Robert McBrien, but offers no evidence or even argument as to why it is not an agent or instrumentality of the FARC. It is unquestionably ALBA Petroleos' burden to rebut a finding that it is an agent or instrumentality of the FARC. *See* Report and Recommendation on Movant's Motions to Dissolve and Motion for Summary Judgment, *Stansell v. FARC, et al.,* No. 19-cv-20896 (S.D. Fla. Aug. 21, 2019), D.E. 248 at 21-22 ("***Along these lines, we find that Movants have failed to create a genuine dispute over a material fact that requires a jury to resolve the conflict. At best, Movants' evidence serves as a denial of the allegations – not a rebuttal.***") [emphasis added], *adopted by* Order Adopting Report and Recommendation, *Stansell v. FARC, et al.,* No. 19-cv-20896 (S.D. Fla. Sept. 26, 2019), D.E. 279.

ALBA Petroleos' threadbare filings are grossly inadequate to warrant further proceedings on this Court's agent or instrumentality determination. In a garnishment proceeding involving another TRIA judgment creditor (*i.e.,* the Stansells) and agent and instrumentality of the FARC (*i.e.,* Samark Jose Lopez Bello, hereafter "Lopez Bello"), the District Court for the Southern District of Florida rejected a claimant's argument that he was entitled to jury trial on the *ex parte* agent and instrumentality determination:

> ***Faced with such a predicament, Lopez Bello attempts to argue that his own evidence, at minimum, raises a factual dispute as to the truth of Plaintiffs' allegations, and that the agency or instrumentality issue must be decided by a jury.*** Fla. Stat. §77.07(2) ("On such motion this issue shall be tried, and if the allegation in plaintiff's motion which is denied is not proved to be true, the garnishment shall be dissolved."). ***While Movants are correct that Florida garnishment law provides for jury trials in such actions,*** *see id.;* §77.08, ***the Eleventh Circuit has also held that "the right to a jury trial in a garnishment action is not***

- 14 -

*__absolute__*, notwithstanding the statute's use of the word 'shall.' "
*Zelaya/Capital Intern. Judgment, LLC v. Zelaya*, 769 F.3d 1296,
1304 (11th Cir. 2014); *cf.* Fla. Stat. §77.07(1) ("The defendant, by
motion, may obtain the dissolution of a writ of garnishment *unless*
*the petitioner proves the grounds upon which the writ was*
*issued*[.]") [emphasis added].

   __*Along these lines, we find that Movants have failed to*__
__*create a genuine dispute over a material fact that requires a jury*__
__*to resolve the conflict. At best, Movants' evidence serves as a*__
__*denial of the allegations – not a rebuttal.*__ *This distinction is key;*
*in order for the matter to be tried, Lopez Bello's evidence must*
*create a genuine issue of material fact as to his status as an*
*agency or instrumentality of the FARC, especially in the face of*
*such strong evidence submitted by Plaintiffs. Lopez Bello fails.*

   *We are simply past the point of dealing with mere*
*allegations; at this stage of the proceedings, and as discussed in*
*detail above, Plaintiffs have not only alleged that Lopez Bello is*
*an agency or instrumentality of the FARC, but shown – with*
*competent, reliable evidence and testimony – this to actually be*
*true. See* Fla. Stat. §77.07(1) (dissolution of writ of garnishment
must take place *unless* the petitioner proves the grounds upon
which the writ was issued). The evidence establishes that (1)
OFAC deemed Lopez Bello to be the "frontman" for El Aissami;
(2) El Aissami had previously been connected to both Barrerra
Barrera and the Cartel of the Suns; and (3) both Barrerra Barrera
and the Cartel of the Suns have been accused by OFAC of
supporting and assisting the FARC's narco-trafficking activities.
We simply do not see anything that would allow us to dissolve the
writs of garnishment in the face of such evidence. *Cf. Doug Sears*
*Consulting, Inc. v. ATS Servs, Inc.*, 752 So. 2d 668, 669-670 (Fla.
1st DCA 2000) (reversing trial court's refusal to dissolve writ in
light of "woefully insufficient" evidence submitted to prove
statutory grounds for issuance of the writs).

   *Stated as simply as possible, Movants have not only failed*
*to convince us that Plaintiffs' allegations are untrue, see Fla.*
*Stat. §77.07(2), but Plaintiffs' claims have been proven. See*
*Stansell*, 771 F.3d at 742; *cf. Doug Sears Consulting*, 752 So. 2d at
670 (finding insufficient a single affidavit used to support
allegations because statements in affidavit were inadmissible
hearsay and party seeking to dissolve writ did not have ability to
cross-examine the witness). In light of the evidence before us, we
find that dissolution of the writs would be improper under Fla.
Stat. §77.07(1), as Plaintiffs have established that the "grounds

upon which the writ was issued" are indeed true.

Report and Recommendation on Movant's Motions to Dissolve and Motion for Summary Judgment, *Stansell v. FARC, et al.,* No. 19-cv-20896 (S.D. Fla. Aug. 21, 2019), D.E. 248 at 21-23 [emphasis added], *adopted by* Order Adopting Report and Recommendation, *Stansell v. FARC, et al.,* No. 19-cv-20896 (S.D. Fla. Sept. 26, 2019), D.E. 279.

Like the agent or instrumentality determination in *Stansell* above [*id.* at 10-11], the agent or instrumentality determination here was properly made *ex parte* and was based on substantial evidence, including government publications. Moreover, like Lopez Bello's protestations in *Stansell,* ALBA Petroleos' vague arguments made in its Motion cannot be deemed a "rebuttal," but rather a mere insufficient "denial."

## IV. Conclusion

Based on the foregoing, Caballero respectfully requests the Court deny ALBA Petroleos any of the relief it seeks, including its request to intervene. Should this Court grant ALBA Petroleos' request for intervention (and it should not), Caballero respectfully requests this Court overrule ALBA Petroleos' "jurisdictional defenses" and objections to venue, and require ALBA Petroleos to appear in this jurisdiction for any hearings, depositions, and other discovery, if necessary.

upon which the writ was issued" are indeed true.

Report and Recommendation on Movant's Motions to Dissolve and Motion for Summary Judgment, *Stansell v. FARC, et al.,* No. 19-cv-20896 (S.D. Fla. Aug. 21, 2019), D.E. 248 at 21-23 [emphasis added], *adopted by* Order Adopting Report and Recommendation, *Stansell v. FARC, et al.,* No. 19-cv-20896 (S.D. Fla. Sept. 26, 2019), D.E. 279.

Like the agent or instrumentality determination in *Stansell* above [*id.* at 10-11], the agent or instrumentality determination here was properly made *ex parte* and was based on substantial evidence, including government publications. Moreover, like Lopez Bello's protestations in *Stansell*, ALBA Petroleos' vague arguments made in its Motion cannot be deemed a "rebuttal," but rather a mere insufficient "denial."

## IV. Conclusion

Based on the foregoing, Caballero respectfully requests the Court deny ALBA Petroleos any of the relief it seeks, including its request to intervene. Should this Court grant ALBA Petroleos' request for intervention (and it should not), Caballero respectfully requests this Court overrule ALBA Petroleos' "jurisdictional defenses" and objections to venue, and require ALBA Petroleos to appear in this jurisdiction for any hearings, depositions, and other discovery, if necessary.

Houston Putnam Lowry, Esq.
Counsel for Plaintiff Antonio Caballero
FORD & PAULEKAS, LLP
280 Trumbull Street - Suite 2200
Hartford, CT 06103
Direct: (860) 808-4123
Mobile: (860) 543-4372
Fax: (860) 249-7500
Email: PTL@HPLowry.com
Federal Bar # CT05955

Joseph I. Zumpano, Esq., PHV10932
E-mail: jzumpano@zplaw.com
Leon N. Patricios, Esq., PHV10931
E-mail: lpatricios@zplaw.com
Counsel for Plaintiff Antonio Caballero
ZUMPANO PATRICIOS, P.A.
312 Minorca Avenue
Coral Gables, FL 33134
Telephone: (305) 444-5565
Fax: (305) 444-8588

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing was filed with the ECF/CM system on this 7th

day of April, 2021, which then distributed it to all parties of record and I further sent copies to the

following:

FARC-EP
c/o Juvenal Ovidio Ricardo Palmera Pineda a/k/a "Simon Trinidad"
Member of FARC-EP
BOP Register No. 27896-016
USP Florence ADMAX
U.S. Penitentiary
P.O. Box 8500
Florence, CO 81226

FARC-EP
c/o Juvenal Ovidio Ricardo Palmera Pineda a/k/a "Simon Trinidad"
Member of FARC-EP
BOP Register No. 27896-016
USP FLORENCE ADMAX
U.S. PENITENTIARY
5880 HWY 67 SOUTH
FLORENCE, CO  81226

Norte del Valle Cartel
c/o Diego Leon Montoya Sanchez
Member of NDVC
BOP Register No. 04171-748
FCI Petersburg Medium
Federal Correctional Institution
P.O. Box 1000
Petersburg, VA  23804

Norte del Valle Cartel
c/o Diego Leon Montoya Sanchez
Member of NDVC
BOP Register No. 04171-748
FCI PETERSBURG MEDIUM
FEDERAL CORRECTIONAL INSTITUTION
1060 RIVER ROAD
HOPEWELL, VA  23860

Nathanial A. Tarnor, Esq.
Hagens Berman Sobol Shapiro LLP
322 8th Avenue-Suite 802
New York, New York 10001
**VIA EMAIL ONLY - nathant@hbsslaw.com**

Houston Putnam Lowry, Esq.