# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNNECTICUT

_____
                                        :
ANTONIO CABALLERO,                      :
                        Plaintiff,      :        Civ. No. 3:20-cv-1939 (JAM)
                                        :
            v.                          :
                                        :
FUERZAS ARMADAS                         :
REVOLUCIONARIAS DE COLOMBIA, et al.     :
                    Defendants,         :
                                        :
            v.                          :
                                        :
INTERACTIVE BROKERS LLC,                :        May 24, 2021
                    Turnover Garnishee. :
_____

### ALBA PETROLEOS DE EL SALVADOR S.E.M. DE C.V.'S
### RESPONSE IN OPPOSITION TO MOTION TO SUBSTITUTE COUNSEL

ALBA Petroleos de El Salvador S.E.M. de C.V. ("ALBA") respectfully submits its
Response in Opposition to the Motion to Substitute Counsel (the "Motion"), Doc. # 125, filed by
the purported Ad Hoc Board of Directors (the "Ad Hoc Board" or "AHB"), which claims to act on
behalf of Petroleos de Venezuela, S.A. ("PDVSA").

## INTRODUCTION

ALBA is a company incorporated in and governed by the laws of El Salvador. PDVSA,
which is a company incorporated in and governed by the laws of Venezuela, does not own any
shares of ALBA. ALBA is 60% owned by Petroleos de Venezuela Caribe, S.A., which in turn is
100% owned by Petroleos de Venezuela America, S.A., which in turn is 100% owned by PDVSA.
*See* **Tab 1** (PDVSA Declaration), at ¶ 2. The remaining 40% of ALBA is owned by ENEPASA,
an inter-municipal non-profit owned by seventeen Salvadorian municipalities. *Id.* ALBA's Board

of Directors is comprised of individuals appointed by the two shareholders. *See* **Tab 2** (ALBA Declaration), at Exhibit 1. No one associated with the Ad Hoc Board is an officer, director, or other representative of ALBA.

On May 14, 2021, this Court entered an Order stating that it "intends to determine the issue of which counsel (if any) is authorized to act on ALBA's behalf" and asked the parties to submit "any additional factual corroboration as to whether any particular attorneys *have been specifically retained by ALBA Petroleos specifically for purposes of this action*." Doc. # 127 (emphasis added). In response to this Order, ALBA, through undersigned counsel, filed ALBA's confirmation that it has specifically retained undersigned counsel in this action. Doc. # 132. Jaime Alberto Recinos Crespin, ALBA's Legal Representative and the Vice President of the ALBA Board of Directors, executed the confirmation in accordance with Salvadorian law and ALBA's Bylaws. *Id.*; **Tab 2** (ALBA Decl.), at 2-3.

The Ad Hoc Board, on the other hand, did not provide any confirmation of the retention of White & Case by ALBA for this action and did not file anything at all from ALBA. Instead, the AHB submitted a supplemental brief arguing that its interpretation of Venezuelan law provides the AHB with the authority to retain counsel for ALBA simply by virtue of PDVSA's status as ALBA's ultimate majority owner. *See* Doc. # 136 at 3-5. The Ad Hoc Board is wrong. While it is ALBA's position that the AHB is not a legitimate body under Venezuelan law, this Court need not reach the issues raised by the AHB regarding Venezuelan law or the U.S. political decision to recognize the authority of the Ad Hoc Board.

First, ALBA, through its officers and directors, is the entity that is entitled to retain its counsel in this proceeding. Second, the laws of El Salvador, not Venezuela, govern ALBA's authority to retain counsel. In accordance with Salvadorian law, ALBA has properly authorized

undersigned counsel to represent it in this proceeding. The Court should therefore deny the AHB's Motion.

## ARGUMENT

### I. The Court Should Deny the AHB's Motion Because ALBA has Authorized Undersigned Counsel, Not White & Case, to Protect ALBA's Assets in this Proceeding.

While the purported Ad Hoc Board frames its Motion as a political or act of state question, this Court should deny the AHB's Motion for the simple reason that it has not established authority from ALBA to appoint ALBA's counsel in this proceeding. In considering ALBA's Motion, the Court must analyze who is authorized to act on behalf of ALBA to retain counsel. In accordance with Salvadorian law and ALBA's Bylaws, it is ALBA's directors who are authorized to retain counsel, not the purported board of a majority owner that is twice removed from ALBA.

As requested by the Court, ALBA has submitted its authorization of Marcos D. Jiménez, P.A. (and other attorneys delegated by Mr. Jiménez) to appear in this proceeding on behalf of ALBA. *See* Doc. # 132; **Tab 2** (ALBA Decl.), at 3. PDVSA does not appoint ALBA's officers and directors, and it does not own any shares of ALBA. Instead, a subsidiary of a subsidiary of PDVSA owns 60% of the shares of ALBA; the rest are owned by Salvadorian entities.

ALBA is incorporated in El Salvador and therefore is governed by Salvadorian law, which applies here. **Tab 2** (ALBA Decl.), at 2; *cf. Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 68–69 (2d Cir. 2017) ("The 'internal affairs doctrine'—a species of interest analysis—provides that the place of incorporation generally has the greatest interest in having its law apply to questions regarding the internal affairs of a corporation, such as 'the relationship between shareholders and directors.'") (quoting *Zion v. Kurtz*, 50 N.Y.2d 92, 100, 428 N.Y.S.2d 199, 405 N.E.2d 681 (1980)); *Scottish Air Intern., Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1234

(2d Cir. 1996) (finding that British law would apply to lawsuit against a British airline because, "[u]nder the generally-recognized choice-of-law rule, questions relating to the internal affairs of a corporation are decided in accordance with the law of the place of incorporation"). As explained by Mr. Recinos Crespin, who is ALBA's Legal Representative, ALBA's "corporate structure and the powers of its Governing Bodies are an internal matter of the company, regulated by its Bylaws, in accordance with the Laws of El Salvador. No other legal system of any other country applies to regulate the corporate structure and/or operation of this company." **Tab 2** (ALBA Decl.), at 2.

Mr. Recinos Crespin also explains that under the laws of El Salvador, ALBA's "Bylaws determine the manner in which the entity appoints its Legal and Judicial Representatives." *Id.* In accordance with the Bylaws, the ALBA Board of Directors has appointed Mr. Recinos Crespin, the Vice President of the Board of Directors, as the company's sole Legal Representative. *Id.* Mr. Recinos Crespin, "in his capacity as sole legal representative of ALBA PETRÓLEOS DE EL SALVADOR, according to the Bylaws of the company and the law of El Salvador, appointed MARCOS JIMÉNEZ of MARCOS D. JIMENEZ, P.A., as the sole and exclusive attorney authorized to represent and defend the interests of ALBA PETRÓLEOS DE EL SALVADOR before all courts in the United States of America where the interests of ALBA PETRÓLEOS DE EL SALVADOR or any of its affiliates are at stake." *Id.* at 3.

The AHB, on the other hand, has not provided anything demonstrating that ALBA has authorized White & Case to appear in this proceeding on ALBA's behalf. The members of the AHB have no authority to act on behalf of ALBA under either Salvadorian law or ALBA's Bylaws. Instead, the AHB has submitted only a declaration from its chairman claiming that the Ad Hoc Board is entitled under Venezuelan law to "exercise the legal representation of PDVSA and its affiliated companies." Doc. # 136-1 at 5-6. Specifically, the Ad Hoc Board incorrectly asserts that

ALBA is a "majority-owned subsidiary of PDVSA." *Id.* at 5. ALBA is not a subsidiary of PDVSA. ALBA is owned in part by Petroleos de Venezuela Caribe, S.A., which in turn is owned by Petroleos de Venezuela America, S.A., which in turn is owned by PDVSA. **Tab 1** (PDVSA Decl.), at ¶ 2. PDVSA's ownership of some of ALBA's shares through other companies does not override ALBA's authority to hire counsel. ALBA has followed Salvadorian law and its Bylaws, and has authorized Marcos D. Jiménez, P.A., not White & Case, to protect its assets in this proceeding.

The AHB attempts to justify its position by arguing that there is evidence that an officer of ALBA, Mr. Rojas, is connected to President Maduro. Doc. # 136 at 2. According to the AHB, the National Assembly of Venezuela has provided the AHB, under the control of Mr. Guaidó, with the authority "to take action to defend and protect the property interests of PDVSA and its PDVSA affiliates abroad" to address the alleged "usurpation and unlawful control" by the Maduro government." *Id.* at 2-3. While ALBA disagrees with the AHB's interpretation of Venezuelan law—indeed, the Venezuela Supreme Court has declared unconstitutional the "Venezuelan transition laws" purporting to create and authorize the Ad Hoc Board—Venezuelan law does not control. The AHB presents no authority for its assumption that Venezuelan law governs ALBA's retention of counsel.

The Court therefore need not decide the political question and act of state arguments made in the Motion. Instead, the Court need only to look at the confirmation provided by ALBA, which comports with ALBA's Bylaws and Salvadorian law. ALBA has unequivocally authorized undersigned counsel to represent it in this proceeding. Thus, the AHB's Motion to Substitute should be denied.

**II.    The Court Should Deny the AHB's Motion Because the Purported Ad Hoc Board Admittedly Cannot Defend ALBA or its Assets.**

The Ad Hoc Board is a legal fiction created for political purposes. The AHB has inserted itself in various U.S. actions brought against PDVSA despite the AHB's consistent admission that it does not have the means and resources to adequately defend PDVSA and its affiliates in those actions.

Here, the AHB will certainly not be able to adequately defend ALBA and its assets in these proceedings. The AHB admits it has no physical control over ALBA and could not even obtain authorization from ALBA for White & Case to represent ALBA in this proceeding. *See* Doc. # 136-1 at 7.

Indeed, the AHB has repeatedly conceded in other U.S. actions that it has no control over PDVSA's and its affiliates' operations, documents, or witnesses. *See Caballero v. FARC*, No. 20-mc-00040, 2021 WL 1884110, at *6 (W.D.N.Y. May 11, 2021) ("WDNY *Caballero*") (admitting that the AHB lacks the "resources and information necessary to defend the interests and protect the assets in the United States of PDVSA and the PDVSA Subsidiaries"); *Impact Fluid Solutions v. Bariven, S.A.*, No. 4:19-cv-00652, Doc. # 71 at 11–12 (S.D. Tex. Apr. 29, 2021) (conceding that "neither the Guaidó government nor the ad hoc Board of Directors of PDVSA appointed by President Guaidó can access the documents, electronic records, or personnel of Defendants. The Guaidó government and the ad hoc Board of Directors are unable to confer with Defendants' employees or public officials in Venezuela who may have direct knowledge of the facts and circumstances related to this case."); *Comparelli et al. v. Bolivarian Rep. of Venez. et al.*, No. 14-cv-24414, Doc. # 132 at 2 (S.D. Fla. Mar. 18, 2019) (conceding that Guaidó does not control Venezuela's state-owned companies in Venezuela and does not "have access to documents, information, or witnesses"); *Dresser-Rand Company v. PDVSA et al.*, Case No. 1:19-cv-02689,

Doc. # 18 at 7 (S.D.N.Y. June 3, 2019) (conceding, once again, that the board "cannot access the documents, electronic records, or personnel of PDVSA"); *Red Tree Investments*, Case No. 1:19-cv-02519-AJN, Doc. #'s 65, 98 (S.D.N.Y.) ("To this day, the Ad Hoc Board of Directors of PDVSA . . . still do not have access to documents and information related to the present dispute.").

In fact, the Ad Hoc Board has repeatedly invoked its inability to defend PDVSA and PDVSA's affiliates as a basis to request stays of the U.S. actions. *See id.* Most recently, in the WDNY *Caballero* case, the AHB stated that it was able to defend the assets at issue to the extent the court could decide issues as a matter of law; however, the AHB still maintained that "to the extent that factual showings become necessary, a stay of this action is imperative." WDNY *Caballero*, No. 20-mc-00040, Doc. # 76 at 8. The WDNY nonetheless denied the AHB's motion to stay.

Here, unlike in the prior cases, the AHB has not sought a stay of proceedings, as of now. But the AHB cannot escape its repeated admissions in prior cases that it does not have the resources to adequately defend the assets of PDVSA or its affiliates in U.S. proceedings. ALBA should not be burdened with counsel that cannot adequately defend its assets in this action. As set forth below, it would be a violation of ALBA's due process rights to saddle it with counsel not of its choosing, who was appointed by a political body that does not have access to ALBA's documents or representatives.

### III.  The Court Should Deny the AHB's Motion Because the Political Question and Act of State Doctrines are Not Implicated.

#### A.  The AHB's Motion to this Court invoking the political question and act of state doctrines rests on the incorrect premise that PDVSA (through the AHB), not ALBA, chooses ALBA's legal representative.

According to the AHB's Motion, the political question and act of state doctrines compel substitution of counsel for ALBA: "[b]ecause the United States . . . recognizes Interim President

Juan Guaidó and his Interim Government as the only legitimate government of Venezuela, it follows that this Court must recognize the decision made by the Interim Government's duly appointed board of PDVSA to engage [White & Case] for its majority-owned subsidiary ALBA Petroleos." Doc. # 125-1 at 5. Thus, according to the AHB, application of the political question and act of state doctrines arises by virtue of the assumption that PDVSA's indirect ownership of the majority (60%) of ALBA's shares (through other companies) entitles the AHB to choose counsel for ALBA. This assumption is wrong.

ALBA is entitled to retain its own counsel in this proceeding; PDVSA does not choose counsel for ALBA. The AHB's Motion relies on prior decisions inapplicable to ALBA. *See* Doc. # 125-1 at 6-9. These decisions involved foreign states, wholly state-owned entities, or entities that are indirectly 100% owned by state-owned entities and/or foreign states. *See id.* (citing WDNY *Caballero*, 2021 WL 1884110; *Jimenez v. Palacios*, No. 2019-0490, 2019 Del. Ch. LEXIS 288 (Del. Ch. Aug. 2, 2019); *Impact Fluid Solutions v. Bariven, S.A.*, No: 4:19-cv-00652, Doc. # 55 (S.D. Tex. May 20, 2020); *OI European Group, B.V. v. Bolivarian Republic* of *Venezuela*, No. 16-1533, 2019 WL 2185040 (D.D.C. May 21, 2019)*; Republic of Panama v. Republic Nat'l Bank of N.Y.*, 681 F. Supp. 1066 (S.D.N.Y. 1988)*; Rusoro Mining Ltd. V. Bolivarian Republic of Venez*, No. 18-7044, 2019 U.S. App. LEXIS 17543 (D.C. Cir. May 1, 2019)). For instance, the WDNY *Caballero* decision found that the AHB had the authority to retain counsel for PDVSA and certain PDVSA subsidiaries that were, directly or indirectly, 100% owned by PDVSA and/or Venezuela.[1] WDNY *Caballero*, 2021 WL 1884110, at *6.

---

[1] The AHB's Motion reads as if the WDNY *Caballero* decision applied to all of PDVSA's subsidiaries, including ALBA. *See* Doc. # 125-1 at 1, 6, 9. The WDNY *Caballero* decision, however, expressly applied only to the specific PDVSA subsidiaries that were before the Court, all of which were wholly-owned PDVSA subsidiaries or subsidiaries indirectly 100% owned by

ALBA disagrees with the WDNY *Caballero* decision; however, even if that decision was correct, it still does not apply here. First, ALBA is not wholly owned by PDVSA, either directly or indirectly through subsidiaries; rather, a PDVSA subsidiary owns 60% of ALBA's shares while the remaining 40% are owned by ENEPASA, an entity owned by multiple Salvadorian municipalities. Second, the laws of El Salvador, and not Venezuela, govern who is authorized to retain counsel for ALBA. In accordance with its Bylaws, the ALBA Board of Directors has delegated legal representation of the company to the Vice President of the Board of Directors, who in turn has appointed undersigned counsel as ALBA's lawyer in this case. Venezuelan law and the alleged authority of the AHB under Venezuelan law do not govern.

### B. Even if PDVSA had the authority to override ALBA's appointment of counsel, the political question and act of state doctrines do not apply.

The AHB's Motion raises judicial—not political—issues of substitution of counsel and due process. Despite the purported Ad Hoc Board's efforts to inject its political agenda into this proceeding, the Court can decide the Motion without considering political issues, which are properly left to the executive branch. Venezuelan political disputes and related political determinations by the U.S. executive branch do not go to the merits of this case. Furthermore, because the AHB admittedly lacks the resources to defend ALBA's assets, substitution of counsel here would violate ALBA's due process rights to protect its assets and defend its interest in this case.

The recent WDNY *Caballero* decision granting the AHB's motion to substitute counsel for PDVSA and certain PDVSA affiliates was, we respectfully maintain, wrongly decided. The

---

PDVSA and/or Venezuela; the decision did not include ALBA. *See* WDNY *Caballero*, 2021 WL 1884110, at *5-7.

WDNY needlessly delved into U.S. and Venezuelan political issues while failing to recognize that the substitution of counsel violates PDVSA's due process rights.

1. **Removal, withdrawal, and substitution of counsel are judicial questions, not political ones.**

The purported Ad Hoc Board frames its Motion as a political or act of state question, ignoring the legal standards the Court must apply when deciding whether to permit substitution of counsel. First, district courts have authority to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Emamian v. Rockefeller Univ.*, 971 F.3d 380, 391 (2d Cir. 2020) (citing *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016)). Courts should exercise this authority to "prevent abuses, oppressions and injustice, so as not to produce hardship, and to do substantial justice." *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No.: 13-cv-5784(CM), 2015 WL 585641, at *4 (S.D.N.Y. Feb. 10, 2015).

Second, district courts exercise wide discretion when deciding whether to permit the withdrawal or substitution of counsel, taking into account the orderly and fair administration of justice and "whether 'the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel.'" *See Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999) (quoting *Brown v. Nat'l Survival Games, Inc.*, No. 91–CV–221, 1994 WL 660533, at *3 (N.D.N.Y. Nov. 18, 1994)) (alteration in original). "The Second Circuit has recognized that certain restraints must be put on the reassignment of counsel lest the right be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *Viscomi v. Conway*, 438 F. Supp. 2d 163, 174 (W.D.N.Y. 2006) (citing *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981)); *see also Welch v. Niagara Falls Gazette*, No. 98–CV–0685E(M), 2000 WL 1737947, at *3 (W.D.N.Y. Nov. 17, 2000) ("When a court denies an attorney leave to withdraw it is usually because the client's rights will be prejudiced by the delay necessitated in obtaining [competent]

replacement counsel or because the court's trial calendar will be adversely affected."); *Bruce Lee Enters., LLC v. A.V.E.L.A. Inc.*, No. 1:10 C 2333(MEA), 2014 WL 1087934, at \*2–3 (S.D.N.Y. Mar. 19, 2014) (denying attorney's motion to withdraw because the proceedings would be disrupted by counsel's withdrawal). "District courts are due considerable deference in decisions not to grant a motion for an attorney's withdrawal." *Whiting*, 187 F.3d at 320.

Third, courts have rejected application of the political question doctrine when substitution of counsel affects the represented party's constitutional rights. *See United States v. Ghailani*, 686 F. Supp. 2d 279, 297 (S.D.N.Y. 2009). In *Ghailani*, an alleged member of Al Qaeda was captured and transported to Guantanamo Bay, where he was charged before a military commission with an embassy bombing. *Id.* at 283–84. Two military officers were assigned as his defense counsel in Guantanamo Bay. *Id.* at 284. Later, Ghailani was transported to the United States and charged in the Southern District of New York. *Id.* Ghailani wanted to keep the same military officers as his defense counsel, but the Government sought to reassign counsel. *Id.* at 285. The Government invoked the political question doctrine, arguing that the reassignment of military personnel was an Executive Branch function left up to the Secretary of Defense. *Id.* at 292.

The Southern District of New York held that the political question doctrine did not apply. *Id.* at 297. The court observed that "both the government and the defense [had] spent considerable energy disputing the scope of the Court's authority to review and enjoin the Defense Department's reassignment of Colonel Colwell and Major Reiter." *Id.* at 292. Refocusing the issue, the court found that "[t]he precise issue before this Court is *not* the Secretary's authority to order reassignment or even the appropriateness of this discretionary personnel decision in this instance." *Id.* (emphasis added). Instead, the precise issue was "the question whether the effect of this decision would infringe upon the defendant's constitutional rights." *Id.* "In deciding that issue, the

Court need not review the Secretary's discretionary decision or his reasoning. It need determine only whether that decision would violate the defendant's [constitutional rights]." *Id.*

### 2. Substitution of counsel would impede the fair administration of justice and result in a denial of due process.

The AHB's Motion is governed by administration of justice and due process concerns rather than the political question or act of state doctrines. The paramount consideration for the Court is whether the AHB can effectively defend ALBA's assets; the Court need not consider the political dispute that the AHB seeks to inject into this case. Just like the *Ghailani* court had to consider Ghailani's constitutional rights in deciding whether to permit the substitution of counsel, this Court must consider the constitutional rights of ALBA. Substitution of counsel would violate the due process rights of ALBA because the Ad Hoc Board admits that its proposed counsel cannot present evidence and otherwise adequately defend the interests of its putative client.

Due process requires that ALBA be meaningfully heard in opposition to Plaintiff's TRIA action. *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 727 (11th Cir. 2014); *see also Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) ("[D]ue process requires . . . an opportunity granted at a meaningful time and in a meaningful manner, for hearing appropriate to the nature of the case.") (internal quotation omitted). "Without notice and a fair hearing where both sides are permitted to present evidence, the third party never has an opportunity to dispute its classification as an agency or instrumentality." *Stansell*, 771 F.3d at 727.

Substitution of counsel violates a defendant's due process rights when the represented party will be left with ineffective representation. *See Daniels v. Lafler*, 501 F.3d 735, 740 (6th Cir. 2007) (finding due process violation when replacement of counsel prejudices the defendant); *see also Bradley v. Henry*, 510 F.3d 1093, 1096, 1098 (9th Cir. 2007) (holding that the defendant's constitutional rights were violated where court-appointed replacement counsel rendered

ineffective representation). Significantly, the Connecticut Rules of Professional Conduct require a lawyer to provide "competent representation," which requires the "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Conn. Rules of Prof'l Conduct R.1.1. The purported Ad Hoc Board has consistently admitted in the U.S. courts that its counsel cannot render competent and thorough representation because the political situation in Venezuela leaves them with no ability to obtain the information and documentation needed to advance the interests of their purported client. *See supra* at Section II.

Through undersigned counsel, ALBA intervened in these proceedings to protect its assets. The purported Ad Hoc Board filed its Motion to Substitute just hours before oral argument on ALBA's Motion to Intervene. Prior to the Motion, the purported Ad Hoc Board did *nothing* to protect the assets of ALBA in this case. While the AHB now claims that it alone is entitled to hire counsel to represent ALBA, it is in no position to do so. The AHB does not sit in Venezuela or El Salvador and it cannot appoint officers and directors for ALBA. The AHB has no control of or access to the records, offices, or operations of ALBA. *See supra* at Section II.[2]

This is why in other cases, the AHB has requested a stay of proceedings. And when a stay expires, the purported board ironically claims that its due process rights are violated if it does not receive another stay of proceedings. *See, e.g.,* **Tab 3** (*Red Tree Investments*, Case No. 1:19-cv-02519-AJN, Doc. # 98), at 1-2. In *Red Tree*, the AHB moved to defer the plaintiff's pending summary judgment motion because, "[t]o this day, the Ad Hoc Board of Directors of PDVSA . . .

---

[2] *See also* **Tab 4** (*Venez. Holdings, B.V., Mobil Cerro Negro Holding, LLC., and Mobil Cerro Negro, Ltd. v. Republic of Venez.*, International Centre for Settlement of Investment Disputes (ICSID), Case No. ARB/07/27, Decision on Respondent's Representation (March 1, 2021)), at ¶¶ 55-56 (finding that Guaidó appointment in ICSID proceeding "has not been shown to be the representative of an *effective* government" and was not the proper appointment under Venezuelan law, without tribunal purporting to address whether the appointment is democratically legitimate) (emphasis in original).

still do not have access to documents and information related to the present dispute." *See id.* In the AHB's recent April 9, 2021, letter to the *Red Tree* court in support of its motion, it argued that "[d]epriving Defendants of this discovery would be a *violation of its due process rights*, especially given that Defendants lack access to even their own documents and witnesses." *Id.* (emphasis added).

The AHB is using the U.S. judicial system for its political purposes, and its lawyers have repeatedly admitted their inability to fully protect the interests of their putative clients. This Court need not recognize the AHB's selection of counsel when such selection would violate ALBA's rights to defend its assets in this proceeding.

### 3. The WDNY wrongly rejected PDVSA's due process argument.

The WDNY *Caballero* decision erroneously decided that PDVSA's due process rights would not be violated by substituting counsel appointed by the AHB. That court incorrectly found that "any obstacle to White & Case's effective representation of PDVSA would be of PDVSA's own making, and the due process argument therefore is a chimera." WDNY *Caballero*, 2021 WL 1884110, at *6. This conclusion ignores the reality of the circumstances in Venezuela.

PDVSA is based in Caracas, Venezuela, has officers and employees there, transacts business all over the world, and most importantly must comply with Venezuelan law. On the other hand, the purported Ad Hoc Board operates outside of Venezuela and exercises no control over the company.[3] Accordingly, PDVSA's due process argument is no chimera—it is a reality. Substituting counsel appointed by the AHB, which has no authority under Venezuelan law, violates the due process rights of PDVSA.

---

[3] The AHB has made this concession on numerous occasions. *See supra* at Section II.

The WDNY also ignored the fact that Venezuelan law forbids PDVSA in Venezuela from recognizing the AHB and its counsel as legitimate representatives of PDVSA.[4] The WDNY claimed that "[w]hoever controls PDVSA can cooperate with whichever lawyers represent PDVSA." *Caballero*, 2021 WL 1884110, at *6 ("refusing to cooperate simply because those in control of PDVSA did not get to pick the lawyers who represent the company in this Court would be akin to cutting off one's nose to spite one's face."). The WDNY *Caballero* decision, however, leaves PDVSA with a Hobson's Choice: (1) follow Venezuelan law by not cooperating with a law firm imposed on it by a U.S. court, or (2) cooperate with the law firm imposed on it and violate Venezuelan law.

Indeed, this Court should note that the AHB has expressed little, if any, desire to cooperate with PDVSA in Venezuela. During the recent hearing on the AHB's motion to substitute counsel in the WDNY *Caballero* case, the AHB's counsel repeatedly maligned PDVSA, characterizing undersigned lead counsel's client as the "illegitimate PDVSA" and as a "thief" that is "under the seizure and control of the illegitimate Maduro regime" and wrongfully controls the "rightful property of the Ad Hoc Board." *See* April 28, 2021, Hrg. Tr. at 30-32. Of course, the Ad Hoc Board does not own any property of PDVSA, which is owned by Venezuela. The AHB's counsel also maligned the Venezuelan Supreme Tribunal as "illegitimate" and its members as "subject to U.S. Treasury sanctions." *Id*. at 32-33. PDVSA is not "illegitimate" and is not a "thief"; it is bound by Venezuelan law, which does not recognize the AHB as a legitimate entity. *See* **Tab 1** (PDVSA Decl.), at ¶ 6

---

[4] Venezuelan law prohibits PDVSA from cooperating with the AHB. *See* **Tab 1** (PDVSA Decl.), at ¶ 6.

Here, the due process violation that would result from displacing ALBA's chosen counsel is even more glaring. PDVSA only indirectly owns 60% of ALBA, and there is no denying that ALBA is a separate entity from PDVSA. The interests of all of ALBA's shareholders, which include Salvadorian entities owning 40% of ALBA, should be respected. The AHB admittedly has no physical control over ALBA and could not even obtain authorization from ALBA for White & Case to represent ALBA in this proceeding. *See* Doc. # 136-1 at 7. Indeed, the AHB has consistently acknowledged in other U.S. actions that it cannot adequately defend the assets of PDVSA or PDVSA's affiliates because it does not have access to the information necessary to mount a defense. *See supra* at Section II. Replacing ALBA's chosen counsel with counsel appointed by the AHB would leave ALBA with ineffective representation and violate ALBA's due process rights.

### 4. The Political Question Doctrine Does Not Apply.

#### a. The *Baker* Factors Do Not Support Application of the Political Question Doctrine.

The Constitution prohibits federal courts from deciding political questions, which normally arise in the context of U.S. foreign policy. *See Baker v. Carr*, 369 U.S. 186, 208–09 (1962). "Yet it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." *Id.* at 211. Indeed, "[t]he action of [the executive] department in recognizing a foreign government and in receiving its diplomatic representatives is conclusive on all domestic courts, which are bound to accept that determination, *although they are free to decide for themselves its legal consequences in litigations pending before them*." *Guaranty Trust Co. v. United States*, 304 U.S. 126, 138 (1938) (emphasis added).

16

Before applying the political question doctrine, district courts should consider the six-factor test set forth in *Baker*. 369 U.S. at 217. According to *Baker*, a political question arises when there is:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* The AHB did not address these factors, but ALBA will do so here.

"The first *Baker* formulation is primarily concerned with direct challenges to actions taken by a coordinate branch of the federal government." *Lane v. Halliburton*, 529 F.3d 548, 560 (5th Cir. 2008); *see also McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1358–59 (11th Cir. 2007). ALBA does not challenge any action taken by the Executive Branch. ALBA does not ask the Court to review the Executive Branch's recognition (or non-recognition) of any foreign government. Instead, ALBA asks the Court to deny substitution of counsel based on due process. Simply put, it must retain current counsel to mount a meaningful defense to Plaintiff's TRIA enforcement action. *Stansell*, 771 F.3d at 727.

The second *Baker* factor considers whether there are judicially discoverable and manageable standards for resolving the issue before the court. *Baker*, 369 U.S. at 217. Here, the Court must apply principles of corporate law and contract law when deciding whether to recognize ALBA's decision to retain undersigned counsel. Further, the Court must decide whether substitution of counsel is appropriate when the proposed new counsel is not in a position to

17

adequately defend the interests of its purported client. This issue implicates due process and administration of justice concerns that this Court can and should resolve.

The remaining *Baker* factors consider whether the court can decide the case without making political determinations that are properly made by another branch of government or that may conflict with or condemn political decisions made by another branch. *Id.* This Court need not delve into political decisions. The Motion instead raises administration of justice and due process concerns, in addition to corporate law issues concerning whether ALBA can choose its own counsel.

### b. The WDNY Should Not Have Applied the Political Question Doctrine.

The purported Ad Hoc Board relies heavily on the WDNY *Caballero* decision, but conveniently omits perhaps the most critical language contained in the entire opinion: "[o]f course, whether substitution might deprive PDVSA and the subsidiaries of their constitutional rights is a justiciable question that this Court can decide. *And if substitution truly deprived PDVSA of its right to due process, the political question doctrine might give way*." WDNY *Caballero*, 2021 WL 1884110, at *7 (emphasis added) (internal citation omitted). In other words, the WDNY *Caballero* decision turned on its finding that no due process violation would result from substituting counsel. Of course, undersigned counsel respectfully disagrees with the WDNY's conclusion that PDVSA and its subsidiaries would not suffer a due process violation. But in any event, the WDNY only analyzed the due process issue in the context of the entities in that matter: PDVSA and subsidiaries that are ultimately 100% owned by PDVSA and/or Venezuela. The WDNY did not have occasion to address the due process implications for a corporation like ALBA: one that is not ultimately 100% owned by PDVSA or Venezuela.

### c. The Ad Hoc Board Relies on Distinguishable Cases.

The AHB continues to rely on cases that are factually and procedurally distinguishable. For example, the Ad Hoc Board cites cases where, unlike here, the recognition of a foreign government was squarely at issue on the merits. In *Jimenez v. Palacios*, directors of PDVSA brought a declaratory judgment action seeking a judicial determination that Guaidó lacked authority to appoint members to the purported Ad Hoc Board, and thus the Delaware Chancery Court applied the political question doctrine to the merits of the case. *See* No. 2019-0490, 2019 Del. Ch. LEXIS 288, at *16–22 (Del. Ch. Aug. 2, 2019). Unlike *Jimenez*, here the recognition of a foreign government has nothing to do with the merits of this case. Plaintiff's TRIA enforcement proceeding attempts to collect on the purported assets of ALBA. The constitution of ALBA's Board of Directors is not at issue.

The Motion also relies on *OI European Group, B.V. v. Bolivarian Republic of Venezuela*, where the court recognized lawyers appointed by Guaidó. No. 16-1533, 2019 WL 2185040, at *5 (D.D.C. May 21, 2019). That case did not raise any concerns that recognizing the Guaidó lawyers would violate due process rights. Rather, *OI European Group* raised a purely legal issue regarding the applicable post-judgment interest amount of an international arbitration award. *Id.* Thus, the purported Ad Hoc Board's lack of control over witnesses, documents, and information was not a critical consideration, as it is here.

Finally, the Motion's reliance on *Impact Fluid Solutions v. Bariven* demonstrates how substitution of counsel would violate due process. No. 19-cv-00652, Doc. # 55 (S.D. Tex. May 20, 2020). In granting the purported Ad Hoc Board's motion to substitute counsel, the Southern District of Texas recognized that the incoming lawyers would have logistical challenges in competently representing their clients. *See id.* ("The Guaidó government currently does not have

access to the personnel who would be most knowledgeable about the claims at issue, and therefore is unable, until a full transition occurs, to respond to the claims.").

Indeed, since the Texas court granted the motion to substitute in *Impact Fluid Solutions*, the plaintiff filed a recent summary judgment motion arguing that "Defendants concede that they cannot contest [the Plaintiff's evidence]." *Id.*, Doc. # 68 at 3. The plaintiff's summary judgment motion relies on repeated acknowledgments by the purported Ad Hoc Board's law firm (Hogan Lovells) that they were "'not able to access responsive documents or information,' including 'information, documentation, and witnesses, regarding the issues in this lawsuit,' and thus are 'not able to provide the requested information at this time.'" *Id.* at 4 (citing Defendant's discovery at Doc. # 68-2). Further, the plaintiff observed that "Defendants also disavowed having any documents or knowledge of the issues in this case." *Id.* (citing Defendant's discovery at Doc. # 68-2). In response, the Ad Hoc Board admitted this was true and requested a Rule 56(d) order denying or deferring consideration of the plaintiff's summary judgment motion. *Id.*, Doc. # 71 at 6, 14. Clearly, the AHB and its law firm are unable to adequately defend the interests of PDVSA and its affiliates in *Impact Fluid Solutions*.

Likewise, if the Court grants the Motion here, the Ad Hoc Board will be unable to adequately defend the interests of ALBA, and White & Case will be unable to render competent representation. The proposed substitution of counsel will severely prejudice ALBA.[5]

---

[5] *Republic of Panama v. Citizens & S. Int'l Bank*, is also distinguishable. 682 F. Supp. 1544, 1546 (S.D. Fla. 1988). There, the court denied a motion to intervene by attorneys for the unrecognized government of Panama and declined the movant's invitation to analyze the propriety of President Reagan's recognition of Eric Arturo Delvalle as the legitimate President of Panama. Moreover, there were no due process concerns that the attorneys of record would be unable to defend the action.

5. **The Act of State Doctrine Does Not Apply.**

The purported Ad Hoc Board contends that "the act of state doctrine compels recognition of the Ad Hoc Board's engagement of White & Case and Spears Manning & Martini as counsel for ALBA Petroleos in this case." Doc. # 125-1 at 12. It does not. While the underlying principle of the act of state doctrine holds that "the courts of one country will not sit in judgment on the acts of the government of another done within its own territory," the doctrine simply has no application here. *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897).

The Supreme Court has been clear: "[a]ct of state issues only arise when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign." *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990) (emphasis in original). "When that question is not the case, neither is the act of state doctrine." *Id.* "In every case in which [the Supreme Court has] held the act of state doctrine applicable, *the relief sought or the defense interposed* would have required a court in the United States to declare invalid the official acts of a foreign sovereign performed within its own territory." *Id.* at 405 (emphasis added).

The AHB relies on the WDNY *Caballero* decision and *Impact Fluid Solutions v. Bariven* to support its act of state argument, both of which broke from this binding Supreme Court precedent by invoking the act of state doctrine to substitute counsel, even though "the relief sought or the defense interposed" did not require the court to declare invalid any act by any foreign sovereign. Doc. # 125-1 at 13. In other words, "the outcome of the case [did not] turn upon" the issue of substitution of counsel. *W.S. Kirkpatrick & Co.*, 493 U.S. at 406. The WDNY *Caballero* case was a TRIA enforcement proceeding, like here. *Impact Fluid Solutions* was a breach of

contract action based on non-payment for goods delivered. Both cases were incorrectly decided, and the Second Circuit will have an opportunity to correctly apply the Supreme Court's holding.

Additionally, the WDNY *Caballero* decision improperly relied on *Jimenez v. Palacios*, No. 2019-0490, 2019 Del. Ch. LEXIS 288 (Del. Ch. Aug. 2, 2019). *Jimenez* was a declaratory judgment action brought by directors of PDVSA seeking a judicial determination that they comprised the rightful board of directors of PDVSA after Guaidó attempted to reconstitute the board. The "relief sought" directly implicated an act of state.[6] Not so here.

The act of state doctrine also does not apply because "[a]cts of foreign governments purporting to have extraterritorial effect . . . by definition, fall[] outside the scope of the act of state doctrine." *Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 522 (2d Cir. 1985). The AHB, located outside of Venezuela, retained White & Case in Houston, Texas, which is also outside of Venezuela. *See* Doc. # 125-3 at 2. The hiring of a U.S. law firm in Texas to (evidently) appear in a U.S. court proceeding in Connecticut is simply not the type of act to which the doctrine was meant to apply.[7] Indeed, "[t]he [act of state] doctrine does not necessarily preclude judicial resolution of all commercial consequences that result from acts of foreign sovereigns performed within their own borders." *Allied Bank Int'l*, 757 F.2d at 521. This is especially so

---

[6] For this reason, the AHB's reliance on *Republic of Panama v. Air Panama Internacional*, 745 F. Supp. 669, 673 (S.D. Fla. 1988), is also misplaced. In *Air Panama*, representatives of General Noriega sought to directly challenge President Reagan's recognition of Delvalle as the legitimate President of Panama. *Id.* at 673. Thus, the court had to decide whether the act of state doctrine applied when adjudicating the substantive rights and liabilities of the parties, just like in *Jimenez*.

[7] The ability of foreign governments to hire counsel to appear in U.S. court proceedings is not without limits. *Cf. Allied Bank Int'l*, 757 F.2d at 521 ("This [act of state] analysis must always be tempered by common sense."). The doctrine does not apply if the "act of state" purports to have "extraterritorial effect," especially where it would impede the fair administration of justice. For example, suppose the government of Canada was sued in a U.S. court proceeding and sought to be represented by a lawyer who was disbarred in the state where the lawsuit was brought. Would the U.S. court be forced to recognize that lawyer's appearance? Of course not.

considering that ALBA is not even located in Venezuela. Concluding otherwise would violate the

Second Circuit's holding in *Allied Bank Int'l. Id.* at 522. The AHB has cited other cases that have

applied the act of state doctrine to selection of counsel for U.S. court proceedings, but *none* of

those cases (other than the WDNY *Caballero* case) came from courts in the Second Circuit.

## **CONCLUSION**

For the foregoing reasons ALBA respectfully requests that the Court deny the Ad Hoc

Board's request for substitution of counsel and grant any and all further relief the Court finds just

and proper.

Respectfully submitted,

By:  *s/Marcos Daniel Jiménez*
Marcos Daniel Jiménez
New York Bar No. 4881736
*Admitted Pro Hac Vice*
Marcos D. Jiménez, P.A.
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone:    305.772.6026
Email:  mdj@mdjlegal.com

- and -

//s// James T. Cowdery (ct05103)
James T. Cowdery (ct05103)
Thomas J. Murphy (ct07959)
Cowdery & Murphy, LLC
280 Trumbull Street
Hartford, CT 06103
(860) 278-5555 Office
jcowdery@cowderymurphy.com
tmurphy@cowderymurphy.com

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 24, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

<u>  //s// Marcos D. Jimenez (ny 4881736)</u>
  Marcos D. Jimenez