UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTONIO CABALLERO,<br>　　　　Plaintiff,<br>　　v.<br>FUERZAS ARMADAS REVOLUCIONARIAS DE COLOMBIA, *et al.*,<br>　　　　Defendants,<br>　　v.<br>INTERACTIVE BROKERS LLC,<br>　　　　Turnover Garnishee.<br><br>INTERACTIVE BROKERS LLC,<br>Counter-Claimant and Third-Party Claimant,<br>　　v.<br>ANTONIO CABALLERO,<br>　　　　Counterclaim Respondent,<br>　　v.<br>KEITH STANSELL, *et al.*,<br>　　　　Third-Party Respondents. | C.A. No.: 3:20-CV-01939-JAM |

**NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION
TO SUBSTITUTE UNAUTHORIZED COUNSEL FOR ALBA PETRÓLEOS**

Third-Party Respondent ALBA Petróleos de El Salvador S.E.M. de C.V. ("ALBA Petróleos" or "ALBA"), through undersigned counsel White & Case LLP and Spears Manning & Martini LLC, respectfully submits the Declaration from Special Attorney General Enrique Falcón, dated June 7, 2021 ("Falcón Decl."), attached as **Exhibit 1,** as supplemental authority to help clarify for the Court certain questions that arose during oral argument on June 2, 2021.

　　1.　　The Declaration of Special Attorney General Falcón addresses questions raised by the Court during oral argument regarding the interpretation and force and effect of certain

Venezuelan emergency public laws and decrees promulgated by the Interim Government.[1]  In particular, the Court questioned the validity of the actions of the Ad Hoc Board in appointing White & Case LLP in terms of Article 5(1) of Decree No. 3.  Article 5(1) provides in relevant part:

> **Article 5.**  The ad-hoc administrative board, in coordination with the special Attorney General appointed by the President-in-Charge of the Republic, shall exercise the legal representation of PDVSA and its affiliated companies abroad, as follows:
>
> 1.     Legal representation may only be exercised for the best defense of the rights and interests of those commercial companies, without such power allowing them to enter into instruments and agreements for the disposal of assets of PDVSA affiliated companies organized abroad. Said responsibility may not be exercised for representation in claims or judicial or extrajudicial disputes.

2.     The Declaration of Special Attorney General Falcón explains the meaning of Article 5(1) of Decree No. 3, including the last sentence queried by the Court.  *See* Falcón Decl. ¶¶ 8-9.  Special Attorney General Falcón explains that Article 5 provides the Ad Hoc Board broad authority, in coordination with the Special Attorney General, to exercise the legal representation of PDVSA and its affiliates abroad for the best defense of their rights and interests.  Falcón Decl. ¶¶ 8-9.  The broad powers identified in the first sentence of Article 5(1) necessarily encompass the authority to engage counsel to defend these companies.  Falcón Decl. ¶ 9.  Under the second sentence of Article 5(1), if that defense involves appearance in judicial proceedings, consistent with Article 11 of Decree No. 3, the Special Attorney General must be involved in the appointment of judicial representatives — as the case was here.  *See* ECF No. 141-2; Falcón Decl. ¶¶ 9-10.

3.     Under Article 11, "the judicial and extra-judicial representation of PDVSA and its direct and indirect subsidiaries, including those organized abroad, shall be solely the responsibility of the Special Attorney General appointed pursuant to Article 15 of [the Transition Statute]."

---

[1] Neither Mr. Jiménez nor Plaintiff raised the Venezuelan law questions raised by the Court.  Indeed, Mr. Jiménez argued — consistent with his Maduro principals — that the Venezuelan emergency transition laws are unconstitutional, and therefore did not engage with those laws in substance.

2

Falcón Decl. at ¶ 10.  Article 15.b of the Transition Statute authorizes the Special Attorney General to defend and represent the rights and interests of Venezuela and its state-owned companies and appoint judicial representatives to carry out any such defense.  *Id.*  Other Venezuelan regulations, in particular Article 12 of the Partial Regulations, establish that the Ad Hoc Board has the right to select and appoint external counsel for litigations, in coordination with the Special Attorney General.  *Id.* at ¶ 11; *see also* ECF No. 136-8.

4. Notwithstanding the foregoing, undersigned counsel reiterates that the validity of the Ad Hoc Board and Special Attorney General's appointment of White & Case under the emergency transition laws, including Decree No. 3, is non-justiciable under the act of state doctrine.  *See* ECF No. 125-1, at 12-14; ECF No. 142, at 6-8.  Indeed, declining to recognize the validity of undersigned counsel's appointment and endorsing Mr. Jiménez's representation would undermine the applicable acts of state by legitimizing the standing of representatives of the unrecognized Maduro regime in U.S. courts.  *See* DeLelle Decl., Ex. 7, ECF No. 125-3 (Statement of Interest of the United States); ECF No. 125-1, at 9 (citing *Guaranty Trust Co.*, 304 U.S. at 137); ECF No. 141, at 5 (citing *Republic of Panama*, 745 F. Supp. at 671-72); ECF No. 141, at 5 (citing *Republic of Panama*, 681 F. Supp. at 1071-73).

5. At oral argument, the Court also questioned the application of the act of state doctrine and Venezuelan law with regard to the internal affairs of foreign corporations and the rights of the Salvadoran minority shareholder.  Relevant to these questions, Special Attorney General Falcón explains the meaning of Article 6 of Decree No. 3 (*see* Falcón Decl. ¶¶ 13-14), an Article referenced by undersigned counsel during oral argument as relied upon by the court in *Impact Fluid Solutions*, No. 4:19-cv-00652, ECF No. 55, at 11.  Article 6 provides in relevant part:

> As long as the usurpation of the Office of the President of the Republic is maintained, and in accordance with the statute governing the transition to

> democracy to restore the term of the Constitution of the Bolivarian Republic of Venezuela, all rights and powers corresponding to the shareholders meeting, board of directors and office of the chairman of PDVSA and its affiliated companies organized in Venezuela, whether existing or appointed after January 10, 2019, are suspended, as are the rights and powers of the ministry of the hydrocarbons sector, and in general, any other ministry, body or entity that might act as a membership body and representative of the Republic at the shareholders' meeting of PDVSA and its affiliated companies organized in Venezuela.

*See* Falcón Decl. ¶ 13.  Article 6 thus bars members of the illegitimate Maduro regime from exercising any authority in respect of PDVSA or its affiliated companies organized in Venezuela, including, for present purposes, PDV Caribe, a wholly-owned PDVSA subsidiary organized under the laws of Venezuela and the majority shareholder of ALBA Petróleos.  *See id.* at ¶ 14; *see also Impact Fluid Solutions*, No. 4:19-cv-00652, ECF No. 55, at 11 (holding that Article 6 "stripped all management power from the previous regime and vested it in the Ad Hoc Board" and "any actions taken by the board of directors appointed by Maduro to PDVSA are null and void, including its appointment of GST for legal representation here").

      6.     The factual evidence submitted by Mr. Jiménez establishes the applicability of Article 6 here.  Specifically, at oral argument undersigned counsel identified Article XXXV of the Bylaws to demonstrate that the legal representation of ALBA Petróleos first rests with the President of ALBA Petróleos who is appointed by ALBA's majority shareholder, PDV Caribe.  *See* Crespin Decl., Ex. 1, ECF. No. 138-2, at 34.  Marcos Rojas — a recognized representative of the illegitimate Maduro regime (ECF No. 141, at 5-6; ECF No. 142, at 2-3; *see also* Presidential Decree No. 3,608 dated September 7, 2018 recorded in Gazette No, 6,405 dated September 7, 2019 *available at* https://gacetaoficial.tuabogado.com/gaceta-oficial/decada-2010/2018/2018-09-07-gaceta-oficial-6405 (reflecting Mr. Maduro's appointment of Mr. Rojas as a member of PDVSA's Board of Directors); Ministry of Petroleum Resolution No. 018 dated February 29, 2020 recorded in Gazette No. 41,832 dated March, 4, 2020 *available at* https://gacetaoficial.tuabogado.com/

4

gaceta-oficial/decada-2020/2020/2020-03-04-gaceta-oficial-41832 (reflecting the Maduro regime's appointment of Mr. Rojas as Director in Charge of the Office for Integration and International Affairs of the Ministry of Petroleum) — usurped control of PDV Caribe and appointed himself President of ALBA Petróleos on December 21, 2018, in the wake of the fraudulent Maduro elections. *See* Crespin Decl., Ex. 2, ECF No. 138-2, at 98 (identifying Rojas as the "President of the Company and Legal Representative of PDV Caribe"); *see also id*. at 101-102 (amending Article XXXI of the Bylaws and authorizing PDV Caribe, as the Series "B" shareholder, to appoint the President Director of ALBA, and memorializing the election of Rojas as President Director). Rojas then purported to delegate his authority to exercise the legal representation of ALBA to Mr. Crespin, the Vice President of ALBA appointed by the minority shareholder ENEPASA. *See id*. at 103.

7. Under Article 6, Mr. Rojas's usurpation of PDV Caribe to appoint himself as President of ALBA Petróleos, and his subsequent delegation of authority to Mr. Crespin are null and void. *See* Falcón Decl. ¶ 14. Therefore, Mr. Crespin's purported instruction of Mr. Jiménez to represent ALBA Petróleos in this case is similarly without legal effect. *See Impact Fluid Solutions*, No. 4:19-cv-00652, ECF No. 55, at 11.

8. In addition, though the Venezuelan emergency public laws and decrees principally regulate Venezuelan nationals, "[i]nternational law recognizes a state's jurisdiction to prescribe law with respect to certain conduct outside its territory by persons not its nationals that is directed against the security of the state or against a limited class of other fundamental state interests[.]" Restatement (Fourth) of the Foreign Relations Law of the U.S. § 412 (Am. L. Inst. 2019). This rule of prescriptive jurisdiction "appl[ies] to assertions of public and private law," Restatement (Fourth) § 407 cmt. f, and, "with respect to activities of affiliated foreign entities," states may

5

exercise prescriptive jurisdiction "by direction to either the parent or the subsidiary," including where it is "essential to implementation of a program to further a major national interest" and "the national program of which the regulation is a part can be carried out effectively only if it is applied also to foreign subsidiaries," Restatement (Third) of the Foreign Relations Law of the U.S. § 414(2) (Am. L. Inst. 1987). As Special Attorney General Falcón explains, the Venezuelan emergency public laws, decrees, and regulations were enacted by the Interim Government in response to Mr. Maduro's usurpation of the Presidency of Venezuela and his regime's usurpation of control over state-owned companies. *See* Falcón Decl. ¶ 6; Falcon Ex. 1. This political crisis is a matter of extraordinary national interest for Venezuela and requires emergency actions by the Interim Government to preserve Venezuelan state-owned assets abroad for the reconstruction of Venezuela in a manner that minimizes the risk to personal security and political repression of representatives of the Interim Government at the hands of the brutal Maduro regime. *See, e.g.*, *Venezuela orders arrest of new Citgo board member named by opposition*, Reuters (Jan. 18, 2021) https://www.reuters.com/businessenergyvenezuela-orders-arrest-new-citgo-board-member-named-by-opposition-2021-01-18/ (discussing the arrest and prosecution of Guaidó-appointed members of the Citgo board of directors, a PDVSA subsidiary); Press Release, U.S. Department of the Treasury, Treasury Designates Venezuelan Officials Involved in Unjust Trial of the "Citgo 6" (Dec. 30, 2020) (announcing sanctions against Venezuelan judges prosecuting the Citgo 6 and stating "[t]he unjust detention and sentencing of these six U.S. persons further demonstrates how corruption and abuse of power are deeply embedded in Venezuela's institutions").

9. Lastly, to the extent that the Court has any doubts regarding the validity of the appointment of White & Case LLP by the Ad Hoc Board and Special Attorney General, the Court may invite the views of the United States pursuant to 28 U.S.C. § 517, as the court did in *Impact*

*Fluid Solutions*. *See* No. 4:19-cv-00652, ECF No. 39 at 3 (S.D. Tex. Nov. 8, 2019) (Order) ("This Court recognizes that some might view the granting or denying of this motion [to substitute counsel] as being akin to a judicial declaration as to the legitimate leader of a foreign nation."); DeLelle Decl., Ex. 7, ECF No. 125-3 (Statement of Interest of the United States).

## CONCLUSION

For the foregoing reasons and those stated in ALBA Petróleos's briefs and oral argument in Support of its Motion to Substitute Unauthorized Counsel, ALBA Petróleos respectfully requests that the Motion to Substitute be granted.

Dated:   June 8, 2021

Respectfully submitted,

By: /s/ *Claire A. DeLelle*
Claire A. DeLelle (phv20060)
Nicole Erb (phv20059)
White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C., 20005
(202) 626-3600
claire.delelle@whitecase.com
nerb@whitecase.com

Joseph W. Martini (Ct 07225)
Ivan Ladd-Smith (Ct 30972)
Spears Manning & Martini LLC
2425 Post Road, Suite 203
Southport, CT 06890
203-292-9766
jmartini@spearsmanning.com
ladd-smith@spearsmanning.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2021, a true and correct copy of the foregoing was electronically served upon filing to all counsel of record via the CM/ECF filing system.

*/s/ Claire A. DeLelle*
Claire A. DeLelle
