UNITED STATES DISTRICT COURT
<u>DISTRICT OF CONNECTICUT</u>

| | | |
|---|---|---|
| ANTONIO CABALLERO | ) | |
| Plaintiff | ) | CIVIL ACTION NO.: |
| | ) | |
| V. | ) | 3:20-CV-01939-JAM |
| | ) | |
| REVOLUTIONARY ARMED FORCES OF | ) | |
| COLOMBIA—PEOPLE'S ARMY A/K/A | ) | |
| FUERZAS ARMADAS REVOLUCIONARIAS | ) | |
| DE COLOMBIA—EJÉRCITO DEL PUEBLO, | ) | |
| AND NORTE DE VALLE CARTEL | ) | |
| Defendants | ) | AUGUST 26, 2021 |
| | ) | |

**PLAINTIFF ANTONIO CABALLERO'S**
**<u>NOTICE OF SUPPLEMENTAL AUTHORITY</u>**

Plaintiff Antonio Caballero ("Caballero") submits this Notice of Supplemental Authority

("Notice") in support of his April 28, 2021 Response to Third-Party Respondent's Motion to

Dismiss and/or Transfer Interpleader Claims [D.E. 113].

Attached as **Exhibit 1** is an August 24, 2021 Order for TRIA Turnover Judgment issued

by the Honorable Judge Moore of the United States District Court for the Southern District of

Florida ("SDFL Court"), granting Caballero's Motion for TRIA Turnover Judgment against the

blocked assets held in the putative name of other agencies and instrumentalities of the FARC

held in that court's jurisdiction and ordering the turnover of same. *Antonio Caballero v. Fuerzas*

*Armadas Revolucionarias de Colombia, et al.*, 1:18-cv-25337-KMM (S.D. Fla. 2021), D.E. 114

("Order").

The Order confirms that once a court makes an agency or instrumentality finding, that

agency or instrumentality has the burden of producing evidence ***<u>rebutting, not merely denying</u>***

***<u>or questioning the adequacy of</u>***, plaintiff's original evidentiary showing. *See* Order, D.E. 114 at

G:\HPL\work\hpl\LIT\Caballero v. FARC - Notice of Supplemental Authority (Judge Moore's Order).docx

4, 7 [emphasis added]. In its Order, the SDFL Court found that Leonardo Gonzalez Dellan, the

agency and instrumentality objecting to the Court's finding in that case, did not meet his

burden. *Id*. at 7. The SDFL Court found that:

> **[*Dellan*] *merely questions the adequacy of Plaintiff's evidence* by downplaying the significance of McBrien's supplemental declaration, the materials on which McBrien relied, and Dellan's own noteworthy role in the Venezuelan currency exchange program**—"a critical component in enabling money laundering of proceeds from the sale of FARC cocaine." McBrien Supp. Decl. ¶¶ 34–35, 40 n.6 (relying, in part, on a January 8, 2019 U.S. Treasury Department Press Release tying Dellan to the Venezuelan currency exchange program).

> *Id*. [emphasis added].

Houston Putnam Lowry, Esq.
Counsel for Plaintiff Antonio Caballero
FORD & PAULEKAS, LLP
280 Trumbull Street - Suite 2200
Hartford, CT 06103
Direct: (860) 808-4213
Mobile: (860) 543-4372
Fax: (860) 249-7500
Email: PTL@HPLowry.com
Federal Bar # CT05955

Joseph I. Zumpano, Esq., PHV10932
E-mail: jzumpano@zplaw.com
Leon N. Patricios, Esq., PHV10931
E-mail: lpatricios@zplaw.com
Counsel for Plaintiff Antonio Caballero
ZUMPANO PATRICIOS, P.A.
312 Minorca Avenue
Coral Gables, FL 33134
Telephone: (305) 444-5565
Fax: (305) 444-8588

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing was filed with the ECF/CM system on this 26th

day of August, 2021, which I distributed to all parties of record and I further sent copies to the

following:

FARC-EP
c/o Juvenal Ovidio Ricardo Palmera Pineda
A/k/a "Simon Trinidad"
BOP Register No. 27896-016
USP Florence ADMAX
P.O. Box 8500
Florence, CO 81226

FARC-EP
c/o Juvenal Ovidio Ricardo Palmera Pineda
A/k/a "Simon Trinidad"
BOP Register No. 27896-016
USP Florence ADMAX
5880 Hwy 67 South
Florence, CO  81226

Norte del Valle Cartel (NDVC)
c/o Diego Leon Montoya Sanchez
BOP Register No. 04171-748
FCI Petersburg Medium
P.O. Box 1000
Petersburg, VA  23804

Norte del Valle Cartel (NDVC)
c/o Diego Leon Montoya Sanchez
BOP Register No. 04171-748
FCI Petersburg Medium
1060 River Road
Hopewell, VA  23860

Houston Putnam Lowry, Esq.

# Exhibit 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:18-cv-25337-KMM

ANTONIO CABALLERO,

      Plaintiff,

v.

FUERZAS ARMADAS REVOLUCIONARIAS
DE COLOMBIA, *et al.*,

      Defendants.

_____/

## <u>ORDER ON MOTION FOR TRIA TURNOVER JUDGMENT</u>

THIS CAUSE came before the Court upon Plaintiff Antonio Caballero's ("Plaintiff") Motion for TRIA Turnover Judgment. ("Mot.") (ECF No. 99). Therein, Plaintiff seeks to enforce his default judgment against Fuerzas Armadas Revolucionarias De Colombia ("FARC"), *see* ("Order Granting Default Judgment") (ECF No. 62), pursuant to (1) the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(e); (2) the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107–297, § 201(a), 116 Stat. 2322, 2337; (3) Rule 69(a) of the Federal Rules of Civil Procedure; (4) Florida's garnishment statutes, Fla. Stat. §§ 55, 77; (5) Southern District of Florida Local Rule 7.1; (6) *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 729–730 (11th Cir. 2014); and (7) Executive Order 13850, which derives its authority from the International Emergency Economic Powers Act ("IEEPA"). *See* Mot. at 1. Garnishee Sunstate Bank ("Garnishee" or "Sunstate") and non-judgment debtor third party Leonardo Gonzalez Dellan ("Dellan") filed responses in opposition. ("Sunstate Resp.") (ECF No. 106); ("Dellan Resp.") (ECF No. 112). Plaintiff filed replies. ("Reply to Sunstate Resp.") (ECF No. 108); ("Reply to Dellan Resp.") (ECF No. 113). The Motion is now ripe for review.

## I.     BACKGROUND

The following is a summary of the relevant procedural history.  On January 28, 2021, the Court granted Plaintiff's *ex parte* Motion (ECF No. 90) seeking clarification from the Court that Dellan is an agent or instrumentality of FARC.  (ECF No. 91).  In doing so, the Court directed the Clerk of Court "to issue such further writs in aid of execution as warranted."  *Id.* at 7.  The Clerk of Court then re-issued the Writ of Garnishment on February 1, 2021 with respect to Dellan's blocked assets held by Sunstate Bank.  ("Writ of Garnishment") (ECF No. 93).  Sunstate filed an Answer to Plaintiff's Writ of Garnishment a week later.  ("Sunstate's Answer") (ECF No. 97).

Plaintiff filed a Notice of Compliance with Florida Statutes § 77.041(2), and Certificate of Service on February 4, 2021.  (ECF No. 95).  On February 8, 2021, Plaintiff filed a Notice of Compliance with Florida Statutes § 77.055, and Certificate of Service.  (ECF No. 98).  Both of Plaintiff's Notices (ECF Nos. 95, 98) list several of Dellan's addresses among those served with notice as to the Writ of Garnishment.  On March 2, 2021, Plaintiff filed the instant Motion.  *See generally* Mot.  Therein, pursuant to Plaintiff's judgment against FARC and the Court's finding that Dellan is an agent or instrumentality of FARC, Plaintiff requests entry of a turnover judgement against Dellan's blocked assets held by Sunstate Bank.  *See generally id.*  Sunstate filed its response in opposition on March 12, 2021.  *See generally* Sunstate Resp.  Plaintiff responded the same day.  *See generally* Reply to Sunstate Resp.

Dellan appeared for the first time in this case through his attorney's Notice of Appearance filed on March 4, 2021.  (ECF No. 100).  Dellan moved for an extension of time to respond to Plaintiff's Motion. *See generally* ("Mot. to Extend") (ECF No. 102).  Plaintiff responded in opposition to Dellan's request for an extension (ECF No. 104) and moved to strike Dellan's Motion.  ("Mot. to Strike") (ECF No. 105).  The Court granted in part and denied in part Dellan's

Motion to Extend and denied Plaintiff's Motion to Strike, finding that "foreclosing Dellan's opportunity to respond to the Motion for TRIA Judgement, despite Plaintiff's compliance with Florida garnishment laws, would not comport with due process under *Stansell*." (ECF No. 111) at 4. On April 12, 2021, Dellan filed his response in opposition, *see generally* Dellan Resp., and Plaintiff filed his reply on April 19, 2021. *See generally* Reply to Dellan Resp.

## II.    LEGAL STANDARDS

Congress enacted TRIA to govern certain post-judgment attachment proceedings for cases involving terrorist attacks. *Harrison v. Republic of Sudan*, 802 F.3d 399, 407 (2d Cir. 2015), *adhered to on denial of reh'g*, 838 F.3d 86 (2d Cir. 2016), and *rev'd on other grounds and remanded*, 139 S. Ct. 1048, 203 L. Ed. 2d 433 (2019). Pursuant to § 201(a) of the TRIA, for every case in which an individual has obtained a judgment against a terrorist party on a claim based on an act of terrorism,

> the blocked assets of that terrorist party (including [those] of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

§ 201(a) (codified at 28 U.S.C. § 1610 note).

In order to obtain relief under the TRIA, a plaintiff must first establish that he or she has obtained a judgment against a terrorist party that is either for a claim based on an act of terrorism or for a claim for which a terrorist party is not immune. *Stansell*, 771 F.3d at 723. The moving plaintiff must then show that the assets are blocked as that term is defined in TRIA. *Id.* The amount that can be recovered by a plaintiff under TRIA cannot exceed the amount of compensatory damages arising from the plaintiff's judgment. *Id.* And, if the plaintiff wishes to execute against the assets of a terrorist party's agency or instrumentality, he must further establish that the

purported agency or instrumentality is actually an agency or instrumentality of the terrorist party. *Id.*

In Florida, garnishment of a third-party agency or instrumentality of a judgement debtor terrorist party under TRIA must also comport with both applicable Florida laws and due process. *Stansell*, 771 F.3d at 727–30.  In *Stansell*, the Eleventh Circuit found that Florida's garnishment laws are not preempted by TRIA.  *Id.* at 730.  However, the Court also noted that "because an agency or instrumentality determination carries drastic results—the attachment and execution of property—it undeniably implicates due process concerns." *Id.* at 726.

"It follows that parties whose assets are under threat of execution pursuant to TRIA § 201 are entitled to notice and an opportunity to be heard in order to rebut the allegations and preserve their possessory interest in blocked assets." *Id.*  "Without notice and a fair hearing where both sides are permitted to present evidence, the third-party never has an opportunity to dispute its classification as an agency or instrumentality." *Id.* at 727.  For these reasons, the *Stansell* Court stated that "notice of commencement of a suit" is not adequate notice for third parties under TRIA. *Id.* at 727.  Rather, the Court held that "due process entitled Claimants to actual notice of the [post-judgment] proceedings against them." *Id.*  Specifically, Florida's garnishment statutes require notice be sent to the defendant—or, as in this case, a non-judgment debtor third party—of whom garnishment is sought "within 5 business days after the writ is issued or 3 business days after the writ is served on the garnishee," Fla. Stat. § 77.041(2), and "[w]ithin 5 days after service of the garnishee's answer on the plaintiff or after the time period for the garnishee's answer has expired." Fla. Stat. § 77.055.

### III.   DISCUSSION

Plaintiff argues that, given his compliance with the TRIA and Florida's garnishment statutes, he is entitled to a turnover judgment against Dellan's blocked assets held by Sunstate. *See generally* Mot.  Dellan opposes Plaintiff's Motion, arguing that he is not an agency or instrumentality of FARC.  *See generally* Dellan Resp.  Sunstate also opposes Plaintiff's Motion because, it contends, the Office of Foreign Assets Control's ("OFAC") guidance requires OFAC to issue a license authorizing the release of the blocked assets in its possession, which total approximately $515,262.66.  *See generally* Sunstate Resp.; *see also* Mot. at 6.  Below, the Court addresses Dellan's arguments in response and Sunstate's opposition, in turn.

#### A.  DELLAN'S OPPOSITION

In his Motion, Plaintiff maintains that he has complied with all the applicable federal and state statutes, and that entry of a TRIA turnover judgment is appropriate.  Mot. at 6–9.

Dellan does not dispute that Plaintiff has satisfied three of the four prongs of TRIA—specifically, that (1) Plaintiff has obtained a judgment against FARC; (2) Dellan's assets are blocked as defined by the TRIA; and (3) the total amount sought for execution does not exceed Plaintiff's compensatory damages.  *See generally* Dellan Resp.  Rather, Dellan solely challenges his status as an agency or instrumentality of FARC, arguing that (1) OFAC has not designated him a Specially Designated Narcotics Trafficker ("SDNT"), and (2) Plaintiff "fails to make an evidentiary linkage between [Dellan] and the FARC."  Dellan Resp. at 7–17.

In his Reply, Plaintiff asserts that (1) Dellan misunderstands the roles of OFAC and the courts; (2) Dellan misstates the agency or instrumentality standard; (3) Plaintiff has met his burden regarding Dellan's agency or instrumentality status; and (4) Dellan has not rebutted Plaintiff's evidentiary showing.  Reply to Dellan Resp. at 1–10.

To begin, Dellan is correct that OFAC has not designated him a SDNT. Dellan Resp. at 7–10. However, this is of no moment, because a SDNT designation is not a prerequisite for one's designation as an agency or instrumentality. Rather, the Eleventh Circuit elucidated the assistance standard in *Stansell*, stating that an agency or instrumentality is one who "materially assist[s] in, or provid[es] financial or technological support for or to, or provid[es] goods or services in support of, the international narcotics trafficking activities of . . . [FARC.]" *Stansell*, 771 F.3d at 724 n.6. Further, it is within the Court's—and not OFAC's—purview to make such a determination. *Id.* at 724. Of course, an OFAC SDNT designation may inform a court's analysis, but it is by no means required. *See id.* at 723. And, despite Dellan's best efforts to distance himself from the money exchange, OFAC has designated him a Specially Designated National ("SDN") for his role in the Venezuelan currency exchange program. Reply to Dellan Resp. at 1.

Next, Dellan's argument that Plaintiff "fails to make an evidentiary linkage" between Dellan and FARC is unavailing. Dellan Resp. at 10–17. The Court found, based upon Plaintiff's *ex parte* motions,[1] (ECF Nos. 81, 90), that Plaintiff had adduced sufficient evidence showing a connection between Dellan and FARC, such that Dellan should be designated an agency or instrumentality of FARC. (ECF No. 91). Specifically, the Court relied upon the supplemental declaration of John Robert McBrien ("McBrien"), a former Associate Director for Global Targeting at OFAC, who opined that Dellan is an agency or instrumentality of FARC due to his involvement in and activities regarding the Venezuela currency exchange program. *See, e.g.,* ("McBrien Supp. Decl.") (ECF No. 81-1) ¶ 40. According to McBrien, the Venezuela currency exchange program is a program which served as a "primary vehicle for money laundering for, and

---

[1]  Which Dellan concedes is entirely proper under the Eleventh Circuit's opinion in *Stansell*. Dellan Resp. at 3; *see also Stansell*, 771 F.3d at 729 ("Claimants were entitled to notice and to be heard before execution, though not necessarily before attachment.").

which was inextricably tied to the bribery of, FARC operatives within or surrounding the Maduro regime . . . while such FARC operatives were acting in support of Maduro's grip on power which enabled his vast international narcotics trafficking of FARC cocaine[.]" *Id.* Moreover, McBrien averred that "the Venezuela currency exchange program is a critical component in enabling money laundering of proceeds from the sale of FARC cocaine." *Id.* ¶ 40 n.6. Accordingly, given McBrien's sworn testimony and the evidence in the record, the Court found Dellan to be an agent and instrumentality of FARC. (ECF No. 91) at 5–6.

As mentioned previously, Plaintiff complied with both the TRIA and Florida's garnishment statutes. (ECF Nos. 90, 95, 98). Dellan appeared and objected to Plaintiff's Motion on March 4, 2021—a month after Plaintiff first effectuated service Dellan's last known addresses. (ECF No. 95). Despite Dellan's tardiness, the Court permitted him to respond to Plaintiff's Motion, allowing him to produce evidence rebutting Plaintiff's evidence. Here, Dellan does no such thing. Dellan Resp. at 10–17. Instead, he merely questions the adequacy of Plaintiff's evidence by downplaying the significance of McBrien's supplemental declaration, the materials on which McBrien relied, and Dellan's own noteworthy role in the Venezuelan currency exchange program—"a critical component in enabling money laundering of proceeds from the sale of FARC cocaine." McBrien Supp. Decl. ¶¶ 34–35, 40 n.6 (relying, in part, on a January 8, 2019 U.S. Treasury Department Press Release tying Dellan to the Venezuelan currency exchange program).

Notably, as Plaintiff points out in his Reply, Reply to Dellan Resp. at 7, Dellan offers no evidence of his own—not even an affidavit—rebutting McBrien's supplemental declaration or Plaintiff's showing of Dellan's agency or instrumentality status. *Stansell v. Lopez Bello*, 802 F. App'x 445, 449 (11th Cir. 2020) (holding that "Lopez Bello 'simply did not present any evidence that changed the district court's position on the agency or instrumentality determination,' despite

being afforded the opportunity to do so through the filing of various motions" and that "[i]t was not error for the District Court to refuse to amend the February 15 order when it was presented with no evidence indicating that any finding or conclusion reached in that order was incorrect") (internal citation omitted).  Accordingly, Dellan has failed to adduce any evidence rebutting his designation as an agency or instrumentality of FARC and Plaintiff's Motion, therefore, must be granted.

### B.  SUNSTATE'S OPPOSITION

As previously stated, Plaintiff maintains that he has complied with all the applicable federal and state statutes, and that entry of a TRIA turnover judgment is appropriate.  Mot. at 6–9.

Sunstate argues in its response that, although Dellan's Sunstate accounts are blocked pursuant to Executive Order 13850, it cannot transfer or release the garnished funds unless OFAC issues a license permitting the blocked funds' disbursement.  Sunstate Resp. at 2–4.  Additionally, should the Court order Sunstate to turn over the blocked funds, Sunstate requests that "this Court require the Plaintiff to post a good and valid surety bond to indemnify BANK from any claims of any person, entity, governmental agency or the like [sic] may be levied, made, asserted and the like against BANK for releasing and/or turning over the Blocked assets." *Id.* at 3–4.

Plaintiff maintains in his Reply that (1) judgment creditors using the TRIA do not need OFAC licenses to be entitled to distribution of blocked assets; (2) other courts have not required OFAC licenses for this purpose; and (3) Sunstate does not address the black letter law for recovery under the TRIA.  Reply to Sunstate Resp. at 2–6.

Courts addressing this issue have concluded that an OFAC license is not required for a garnishee to distribute blocked assets subject to the TRIA.  *See, e.g., Stansell v. Revolutionary Armed Forces of Colombia*, No. 8:09-CV-2308-T-36AAS, 2019 WL 2537791, at *4 (M.D. Fla.

June 20, 2019) ("As noted in the [United States' Statement of Interest], to the extent assets are subject to the TRIA, as they are here, Section 201 overrides the OFAC regulations that require a party to obtain a license before it can attach an asset owned by a terrorist group or its agent or instrumentality."); *Harrison v. Republic of Sudan*, 802 F.3d 399, 409 (2d Cir. 2015) ("Once a district court determines that blocked assets are subject to the TRIA, those funds may be distributed without a license from OFAC.") *rev'd on other grounds*, 139 S.Ct. 1048; *Estate of Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch*, 919 F. Supp. 2d 411, 422 (S.D.N.Y. 2013) ("[I]n the event a court determines that blocked assets are subject to TRIA, those funds may be distributed without a license from OFAC.") (quoting the United States' Statement of Interest); *see also Weininger v. Castro*, 462 F. Supp. 2d 457, 499 (S.D.N.Y. 2006) (quoting same). The text of the TRIA is clear:

> Notwithstanding any other provision of law, and except as provided in subsection (b), *in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment* to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

§ 201(a).

Here, no OFAC license is required for Plaintiff—who has properly brought his claim pursuant to the TRIA—to satisfy his judgment against Dellan, an agency or instrumentality of FARC, and his blocked assets in Sunstate's possession.[2]  *See* § 201(a); *Stansell*, 2019 WL

---

[2]  To the extent that Sunstate contends the U.S. Treasury Department's website guidance purports to require an OFAC license in order for a garnishee to disburse blocked assets, Sunstate Resp. at 2–4, the Court finds this argument to be without merit in light of the clear language of the TRIA and the persuasive reasoning of other courts that have found to the contrary.

9

2537791, at *4; *Harrison*, 802 F.3d at 409.  Accordingly, Plaintiff's Motion is granted.[3]

## IV.   CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that:

1. Plaintiff Antonio Caballero's Motion for TRIA Turnover Judgment (ECF No. 99) is GRANTED;

2. Non-judgment debtor third party Leonardo Gonzalez Dellan's assets identified in Garnishee Sunstate Bank's Answer to the Writ of Garnishment (ECF No. 97) are blocked assets under the Terrorism Risk Insurance Act of 2002;

3. Sunstate Bank must turn over Leonardo Gonzalez Dellan's blocked assets in its possession to Plaintiff Antonio Caballero within seven (7) days of the Court's entry of Final Judgment in Garnishment pursuant to the Terrorism Risk Insurance Act of 2002, the Court's Order (ECF No. 91) designating Leonardo Gonzalez Dellan an agency or instrumentality of Fuerzas Armadas Revolucionarias De Colombia, and this Order;

4. A Final Judgment in Garnishment against Sunstate Bank for $515,262.66, subject to offset for Sunstate Bank's statutory attorney's fees, will be entered by separate order;

5. Sunstate Bank may submit a motion for its statutory costs and expenses, including attorney's fees, within fourteen (14) days of this Order if Plaintiff

---

[3] Because the law is clear on this issue, the Court does not find it necessary for Plaintiff to post a surety bond as Sunstate requests in its Response.  Sunstate Resp. at 3–4.

Antonio Caballero and Sunstate Bank fail to agree on Sunstate Bank's statutory costs and expenses;

6.    Plaintiff Antonio Caballero shall pay Sunstate Bank $100 pursuant to Fla. Stat. § 77.28, if he has not already done so; and

7.    Sunstate Bank will be discharged from further liability under Plaintiff Antonio Caballero's Writ of Garnishment (ECF No. 93).

DONE AND ORDERED in Chambers at Miami, Florida, this <u>24th</u> day of August, 2021.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record