UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTONIO CABALLERO,<br>    *Plaintiff*,<br><br>v.<br><br>FUERZAS ARMADAS<br>REVOLUCIONARIAS DE<br>COLOMBIA *et al.*,<br>    *Defendants*. | No. 3:20-cv-01939 (JAM) |

**ORDER DENYING MOTION TO SUBSTITUTE COUNSEL**

This transnational case involves an effort to collect more than $40 million from a brokerage account based in Greenwich, Connecticut. The brokerage account is owned by an oil company that is incorporated in El Salvador and whose majority shareholder is controlled by the government of Venezuela.

The current dispute has nothing to do with the merits of the case. Instead, it involves a procedural threshold issue of *who* has the right to appear as counsel to defend the oil company in these proceedings.

Two groups of lawyers claim the right to do so. The first group has already appeared and litigated in this action on behalf of the company. These lawyers claim they have the right to represent the company because they were retained by the company's management in accordance with the company's bylaws and the law of El Salvador where the company is based and incorporated.

The second group has filed a motion to substitute themselves as counsel for the company in this action. These lawyers say they have the right to represent the company because they were retained by the company's state-owned majority shareholder in Venezuela.

1

Who is right? Applying choice-of-law principles, I defer to the law of the company's state of incorporation in El Salvador and conclude that the company's management—rather than its majority shareholder from Venezuela—has the right to decide who shall represent the company in court proceedings. Although it is argued that the law of Venezuela must control under the "act of state" doctrine, this doctrine does not apply extraterritorially to allow Venezuela to override the basic corporate law principles of El Salvador where the company is incorporated. Accordingly, I will deny the motion to substitute counsel.

## BACKGROUND

The plaintiff in this action is Antonio Caballero. The primary defendant is the Fuerzas Armadas Revolucionarias de Colombia ("FARC"), an insurgent organization in Colombia that until very recently was designated by the United States government as a terrorist organization.[1]

According to Caballero, FARC tortured and killed his father who was a former United Nations ambassador and an outspoken critic of narco-trafficking in Colombia. Caballero sued FARC in the United States under a federal law—the Anti-Terrorism Act, 18 U.S.C. § 2333—that authorizes civil lawsuit against terrorists, and he obtained a default judgment for more than $40 million of compensatory damages in the U.S. District Court for the Southern District of Florida.[2]

This action in the District of Connecticut began in October 2020 when Caballero registered his Florida judgment with this Court.[3] On the basis of this judgment, Caballero then moved for a turnover order against a financial account that is held in the name of ALBA

---

[1] *See, e.g., Saldana v. Occidental Petroleum Corp.*, 774 F.3d 544, 545–46 (9th Cir. 2014); Michael Crowley, *U.S. Removes Colombia's FARC Rebel Group from Terrorist List*, N.Y. TIMES, Nov. 30, 2021.
[2] See Caballero v. Fuerzas Armadas Revolucionarias de Colombia, 2020 WL 7481302 (S.D. Fla. 2020).
[3] Doc. #1.

Petróleos de El Salvador S.E.M. de C.V. ("ALBA") by Interactive Brokers, LLC of Greenwich, Connecticut.[4]

Caballero sought the turnover order in accordance with a federal law known as the Terrorism Risk Insurance Act of 2002 ("TRIA"). This law allows a plaintiff who has obtained a judgment against a terrorist party to bring a post-judgment action against the assets of an agency or instrumentality of the terrorist party.[5] According to Caballero, he may execute his Florida judgment against ALBA because it is an agency or instrumentality of FARC.[6]

Neither Interactive Brokers nor ALBA initially filed an objection to Caballero's turnover motion (and they claim they were not properly served or noticed). So the Court granted the unopposed motion in the amount of $41,734,153.93.[7]

Caballero then tried to compel Interactive Brokers to turnover the funds, but Interactive Brokers in turn filed a third-party interpleader complaint, citing the competing claims of Caballero and others to the funds in the ALBA account.[8] In addition, ALBA moved to intervene in this action and to stay the turnover order, principally arguing that it had not been properly noticed and served by Caballero with his turnover motion and that it was not an agency or instrumentality of FARC.[9]

---

[4] Doc. #28.
[5] *See Bank Markazi v. Peterson*, 578 U.S. 212, 217 (2016) (discussing and citing TRIA § 201(a), 116 Stat. 2337, as codified in a note following 28 U.S.C. § 1610); *see also Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 722–23 (11th Cir. 2014); *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 48 (2d Cir. 2010). This action is one of many TRIA actions that Caballero has filed nationwide seeking to enforce his judgment against alleged agencies or instrumentalities of FARC. *See, e.g., Caballero v. Fuerzas Armadas Revolucionarias De Colombia*, 2021 WL 6135758 (C.D. Cal. 2021); *Caballero v. Fuerzas Armadas Revolucionarias De Colombia*, 2021 WL 3927826 (S.D. Fla. 2021); *Caballero v. Fuerzas Armadas Revolucionarias de Columbia*, 2021 WL 307558 (W.D.N.Y. 2021), *recon. denied*, 2022 WL 71662 (W.D.N.Y. 2022); *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 2020 WL 11571726 (N.D. Cal. 2020).
[6] Doc. #28-8 at 12–21.
[7] Doc. #53.
[8] Doc. #64. The interpleader complaint describes claims made on the account by additional plaintiff parties—the "Pescatore claimants" and the "Stansell claimants" who have also obtained judgments against FARC that they seek to enforce against ALBA. *Id.* at 7–9.
[9] Docs. #90, #90-1.

ALBA's motion to intervene was filed by local counsel and on behalf of an attorney from Florida named Marcos D. Jiménez.[10] I scheduled oral argument on ALBA's motion to intervene, but continued the argument after a last-minute motion to substitute counsel was filed by different local counsel and the law firm of White & Case, LLP, who claimed they had the right to represent ALBA in this action.[11] Because of this dispute about which counsel—the group of lawyers led by attorney Jiménez *or* the group of lawyers led by the law firm of White & Case—had authority to represent ALBA in this action, I advised the parties that I would need to rule as a threshold matter on the motion to substitute counsel before addressing ALBA's motion to intervene and other motions in this case.[12] I instructed the competing counsel to file further submissions with respect to their asserted authority to represent ALBA and then heard argument on the motion to substitute.[13] This ruling now follows.

## DISCUSSION

Federal law recognizes the right of a party to retain counsel to act for federal court proceedings. *See* 28 U.S.C. § 1654. If a party is an artificial entity such as a corporation, federal law requires the appearance and assistance of licensed counsel. *See Lattanzio v. COMTA*, 481 F.3d 137, 139–140 (2d Cir. 2007) (*per curiam*).[14]

Who has the right to represent ALBA? As best as I can tell, the answer to this question depends on who has the right to speak on behalf of ALBA and to decide who should represent ALBA in federal court proceedings. And this in turn depends on considering ALBA's corporate structure and ownership as well as the law that generally governs ALBA as a corporation.

---

[10] Docs. #87–#90.
[11] Docs. #125, #127.
[12] Docs. #127, #156.
[13] Docs. #127, #131, #145, #150.
[14] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

ALBA is incorporated in El Salvador and therefore is generally governed by Salvadoran law.[15] ALBA is 60% owned by PDV Caribe, S.A, which is 100% owned—directly or indirectly—by Venezuela's state-owned oil company: Petróleos de Venezuela, S.A. ("PDVSA").[16] ALBA is 40% owned by ENEPASA, which is an inter-municipal nonprofit owned by 17 Salvadoran municipalities.[17]

Jiménez and White & Case present competing arguments for why they have the right to represent ALBA in this action. According to Jiménez, he was retained by ALBA's Legal Representative, Jaime Alberto Recinos Crespin, to serve as counsel for this action.[18] Crespin is a Salvadoran national who is currently domiciled in El Salvador.[19] In November 2018, Crespin was appointed by ENEPASA to ALBA's Board of Directors as Vice President and Legal Representative for a three-year term.[20] The current appointment of ALBA's Board of Directors was registered in the Salvadoran Registry of Commerce in December 2018.[21] The "delegation of

---

[15] Doc. #138-2 at 3, 10–15. Federal Rule of Civil Procedure 44.1 provides that "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." The parties have each submitted affidavits and other materials to support their interpretations of foreign law including the law of El Salvador and Venezuela.

[16] The parties agree that ALBA is 60% owned indirectly by PDVSA through at least one intermediary subsidiary, Petróleos de Venezuela Caribe, S.A., but appear to disagree about whether there is an additional intermediary subsidiary between ALBA and PDVSA. On the one hand, an affidavit submitted by White & Case of Horacio Francisco Medina Herrera, chairman of the Ad Hoc Administrative Board of PDVSA, states that "PDVSA owns ALBA Petróleos through PDV Caribe, S.A., a wholly-owned Venezuelan subsidiary of PDVSA." Doc. #136-1 at 5 (¶ 14). On the other hand, an affidavit submitted by Jiménez of Anabella Del Valle Rivas alleges that there is yet an additional intermediary subsidiary known as Petróleos de Venezuela America, S.A. Doc. #138-1 at 3 (¶ 2). Whether there is an additional intermediary would not affect my ruling on this motion. Nor do the parties otherwise identify the country of incorporation of the intermediary companies Petróleos de Venezuela Caribe, S.A. and Petróleos de Venezuela America, S.A. Even assuming these intermediaries are incorporated in Venezuela rather than El Salvador, this would not affect my ruling. The parties appear to agree that PDVSA as a state-owned oil company of Venezuela is incorporated under Venezuelan law. Doc. #138-1 at 2 (¶ 1).

[17] Doc. #138-2 at 98; Doc. #138-1 at 3 (¶ 2).

[18] Doc. #132-1; Doc. #138-2 at 2–4.

[19] Doc. #138-2 at 2, 102.

[20] *Id*. at 98–103.

[21] *Id*. at 3; Doc. #141-3 at 2. The affidavit submitted by White & Case of Lilian Zelaya states that the apportionment of ALBA's Board of Directors registered in December 2018 was scheduled to expire on December 21, 2021. The parties have not provided any additional records to suggest that the apportionment approved and registered in December 2018 has been replaced by a new apportionment registered in or after December 2021.

the Legal Representation" of ALBA to the Vice President has been the company's practice since 2006.[22]

> According to an affidavit filed on behalf of and signed by Crespin:
>
> [ALBA] is governed by the laws of El Salvador. Its corporate structure and the powers of its Governing Bodies are an internal matter of the company, regulated by its Bylaws, in accordance with the Laws of El Salvador. No other legal system of any other country applies to regulate the corporate structure and/or operation of this company. Neither Venezuelan law, nor the law of any other country, applies to determine the manner in which [ALBA] chooses its authorities and particularly its Legal and Judicial Representatives.[23]

Crespin further states that he, "in his capacity as sole legal representative of [ALBA], according to the Bylaws of the company and the law of El Salvador, appointed [Jiménez] as the sole and exclusive attorney authorized to represent and defend the interests of [ALBA] before all courts in the United States of America where the interests of [ALBA] or any of its affiliates are at stake," specifically including this action.[24]

White & Case does not contest any of these facts. It does not dispute that ALBA is organized under the law of El Salvador or offer any evidence that Crespin was not actually appointed to ALBA's Board of Directors and as Vice President and Legal Representative. Nor does it point to any subsequent action taken by ALBA's Board of Directors or through changes to its bylaws to divest Crespin of the position of Legal Representative of ALBA. Indeed, one of White & Case's own filings reflects that Crespin served as ALBA's "Legal Representative" according to the Salvadoran Registry of Commerce as of May 17, 2021.[25]

---

[22] Doc. #138-2 at 103.
[23] *Id*. at 3.
[24] *Id*. at 4. I decline to speculate, as Caballero requests, that Crespin is no longer ALBA's Legal Representative under ALBA's bylaws or that Crespin did not actually sign the letter submitted on his behalf absent any evidence in the record to the contrary. *See* Doc. #139 at 10–12; Doc. #150 at 23–26.
[25] Doc. #142-4 at 6; Doc. #136-10 at 6.

Rather than challenge Crespin's authority under the law of El Salvador, White & Case says it does not matter. All that matters, according to White & Case, is the law of Venezuela, because ALBA is majority owned by PDVSA, a state-owned entity of the Venezuelan government.[26]

According to White & Case, it was retained by the Ad Hoc Board of Directors of PDVSA ("Ad Hoc Board"). The Ad Hoc Board was appointed by Venezuelan Interim President Juan Guaidó.[27] In January 2019, the National Assembly of Venezuela declared Venezuelan president Nicolás Maduro to be illegitimate, and it declared Guaidó to be the Interim President of Venezuela.[28]

Most significantly, the United States recognizes the National Assembly and Interim President Guaidó (together, the "Interim Government") as the only legitimate government of Venezuela.[29] Because the United States has recognized the government of Juan Guaidó rather than the government of Nicolás Maduro, I fully accept for purposes of this ruling that the interim government of Juan Guaidó has exclusive authority to speak on behalf of the government of Venezuela.

White & Case contends that laws enacted by the Interim Government of Juan Guaidó "provide that the legal representation of PDVSA and its subsidiaries abroad is entrusted to the Ad Hoc Board, in coordination with the Special Prosecutor."[30] These laws were enacted "to countermand the unlawful physical possession and exercise of control by representatives of the Maduro-regime over these companies' shares and assets."[31]

---

[26] Doc. #142 at 2–5.
[27] Doc. #136 at 2–4; *see also Caballero*, 2021 WL 1884110, at *3.
[28] *Caballero*, 2021 WL 1884110, at *2.
[29] *Ibid*.
[30] Doc. #142-2 at 3.
[31] *Ibid*.

7

Specifically, under Interim President Guaidó's Decree No. 3, promulgated on April 10, 2019, "[t]he ad hoc administrative board shall exercise all powers that, in accordance with the law, statutes and other regulations, correspond to the shareholders' meeting, board of directors and office of the chairman of [PDVSA] and its affiliated companies organized in Venezuela, for exercise of the following rights[,]" including "[t]o exercise the legal representation of PDVSA and its affiliated companies for the purposes referred to in Article 5."[32]

Under Article 5 of the decree, "[t]he ad-hoc administrative board, in coordination with the special prosecutor appointed by the President-in-Charge of the Republic, shall exercise the legal representation of PDVSA and its affiliated companies abroad."[33]

An "affiliated company" is defined as:

> 1. Any commercial company controlled by PDVSA.
> 2. Any company in which any company controlled by PDVSA is in turn a controlling shareholder.
> 3. Any other company in which any company controlled by the companies referred to in these numerals is a controlling shareholder, irrespective of the degree of control.[34]

"Control," in turn, "means any share of fifty per cent (50%) or more of the share capital."[35]

According to White & Case, ALBA is an "affiliated company" under Decree No. 3 because ALBA is more than 50% owned by PDVSA. Therefore, the Ad Hoc Board is authorized to exercise legal representation for ALBA under Venezuelan law.[36]

This summarizes the competing positions of the Jiménez group of lawyers and the White & Case group of lawyers. Who has the right to represent ALBA? In my view, because the

---

[32] Doc. #136-7 at 5.
[33] *Id*. at 7.
[34] *Id*. at 5.
[35] *Ibid*.
[36] Doc. #136 at 5–6 (¶¶ 9–10); Doc. #142 at 7; Doc. #142-2 at 4; Doc. #146 at 2 (¶¶ 1–2).

8

dispute is ultimately about whether the law of El Salvador or the law of Venezuela should control, the answer follows from an application of traditional principles of choice of law.

### Choice of law

I start with the "internal affairs" doctrine—a basic presumption that the law of a company's state of incorporation governs "issues involving matters that are peculiar to corporations and other associations"—issues "involv[ing] the 'internal affairs' of a corporation—that is the relations inter se of the corporation, its shareholders, directors, officers or agents." RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 302 cmt. (a) ("Restatement").[37] The issue here is doubtlessly one of "internal affairs." It is a power struggle of internal decision-making about whether a company's management or the company's majority shareholder has the right to select and retain the counsel who will represent the company in court proceedings.

According to the Restatement, for issues involving the internal affairs of a company (as distinct from the rights and duties of the company toward third persons), "[t]he local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied." Restatement, § 302(2). As the U.S. Supreme Court has explained, "[t]he internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to

---

[37] The briefing is unclear about which jurisdiction's choice-of-law rules should apply. Jiménez's briefing does not specify a controlling jurisdiction, while White & Case suggests that Connecticut's choice-of-law rules should apply, even though this case involves the Court's federal question jurisdiction. *See* Doc. #138 at 3–4; Doc. #142 at 3. In any event, both federal law and Connecticut law rely on the choice-of-law principles as set forth in the Restatement. *See Eli Lilly Do Brasil, Ltda. v. Fed. Express Corp.*, 502 F.3d 78, 81 (2d Cir. 2007) ("[i]n general, the federal common law choice-of-law rule is to apply the law of the jurisdiction having the greatest interest in the litigation" and "absent guidance from Congress, we may consult the Restatement"); *Alpert v. Starwood Hotels & Resorts Worldwide, Inc.*, 799 F. App'x 89, 90 (2d Cir. 2020) (noting that "Connecticut courts adhere to the 'most significant relationship test' to determine which jurisdiction's law is applicable, based on the factors outlined in sections 145 and 6 of the Restatement (Second) of Conflict of Laws").

regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). Therefore, "a corporation—except in the rarest situations—is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation." *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 90 (1987).

Likewise, the Second Circuit has noted that "[u]nder the generally-recognized choice-of-law rule, questions relating to the internal affairs of corporations are decided in accordance with the law of the place of incorporation." *Scot. Air Int'l, Inc. v. Brit. Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996); *see also Nymbus, Inc. v. Sharp*, 2019 WL 692938, at *4 (D. Conn. 2019) (noting that "[t]he default rule in Connecticut is that the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation because application of that body of law achieves the need for certainty and predictability of result while generally protecting the justified expectations of parties with interests in the corporation").

Here, the internal affairs doctrine gives rise to a strong presumption that the issue of which counsel may represent ALBA should be determined under the law of El Salvador where ALBA is incorporated. White & Case does not dispute the evidence submitted by Jiménez—through Crespin's declaration—that ALBA's bylaws provide that the corporation is governed by Salvadoran law, and that the selection of its Board of Directors and Legal Representative are determined in accordance with the company's bylaws. Nor does White & Case dispute Jiménez's

evidence that, under ALBA's bylaws, Crespin is ALBA's Legal Representative and that Crespin chose to retain Jiménez as ALBA's counsel for this litigation.[38]

Moreover, there is nothing in the parties' submissions to suggest that the law of El Salvador does not generally follow the corporate law principles underlying the internal affairs doctrine. Indeed, rather than arguing that the law of El Salvador does not authorize ALBA's retention of Jiménez as counsel, White & Case argues instead that the law of Venezuela "override[s]" the law of El Salvador.[39]

Does it? As an initial matter, White & Case is correct that the internal affairs doctrine does not automatically require a court to apply the law of the state of incorporation. As noted above, the Restatement instructs that for matters of internal affairs the law of a state other than the state of incorporation may be applied "in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties." Restatement, § 302(2). To decide if this is one of those "unusual" cases where the default presumption should not apply, I must consider factors including:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

---

[38] Although White & Case suggests that Crespin was improperly appointed to be the Legal Representative by Marcos Rojas, Doc. #146 at 5 (¶ 6), the record is clear that Crespin was appointed by ALBA's Board of Directors, consistent with ALBA's bylaws and historical practice. Doc. #138-2 at 103.
[39] Doc. #142 at 3; *see also id*. at 2 ("the emergency laws of Venezuela apply over El Salvadoran law in this case").

*Id*. § 6(2). "The forum should also appraise the relative interests of the states involved in the determination of the particular issue. In general, it is fitting that the state whose interests are most deeply affected should have its local law applied." *Id*. § 6, cmt. f.

But the Restatement is clear that the application of the law of the state of incorporation "is supported by many of the[se] choice-of-law factors." *Id*. § 302, cmt. g. In particular, applying the law of the state of incorporation "furthers the choice-of-law factors of certainty, predictability and uniformity of result, ease in the application of the law to be applied and … protection of the justified expectations of the parties." *Ibid*. "By reason of these factors and of the force of precedent, the local law of the state of incorporation should be applied except in the extremely rare situation where a contrary result is required by the overriding interest of another state in having its rule applied." *Ibid*. Indeed, "[i]n the absence of an explicitly applicable local statute, the local law of the state of incorporation has been applied almost invariably to determine issues involving matters that are peculiar to corporations." *Ibid*.

White & Case has not made a strong enough showing to warrant overriding Salvadoran law and the internal affairs doctrine's strong presumption with respect to the retention of counsel for this action. While the legal issue presented here arises in an unusual context, it does not implicate the circumstances in which the internal affairs doctrine is least likely to apply. There is not a Salvadoran law that is explicitly applicable to this situation or that defers to Venezuelan law. And there is no indication in the record that ALBA is some sort of shell or alter ego company with little contact with El Salvador. *Cf. ibid.* ("The reasons for applying the local law of the state of incorporation carry less weight when the corporation has little or no contact with this state other than the fact that it was incorporated there.")

Quite to the contrary, ALBA is 40% owned by ENEPASA, a nonprofit comprising 17 Salvadoran municipalities. White & Case altogether fails to address the interests of ENEPASA. But the interests of a substantial minority shareholder—and El Salvador's interest in protecting the interests of the minority shareholder who is its domiciliary—are highly relevant to the choice-of-law inquiry. PDV Caribe, S.A. and ENEPASA decided to incorporate ALBA under the laws of El Salvador, and they determined by means of their choice of incorporation and through the company's bylaws that the law of El Salvador rather than the law Venezuela would generally govern the company. Under ALBA's bylaws, the Board of Directors may delegate legal representation to an executive, and in this case it delegated legal representation to Crespin, the President of ENEPASA's Board of Directors.[40] ENEPASA clearly has an interest at stake in the choice of ALBA's legal representation, and El Salvador has an interest in protecting ENEPASA's rights as a shareholder in a joint venture that is incorporated in El Salvador.

Applying Salvadoran law to this dispute is supported by many of the choice-of-law factors provided in § 6 of the Restatement. It is clearly supported by basic principles of corporate law: that a company is a separate legal entity from its shareholders and that a company's management, not its majority shareholder, has the prerogative to select which counsel shall represent the company in court proceedings. When a company has to hire counsel, it does not have to convene a shareholders meeting for the shareholders to decide who will be retained. The day-to-day decisions of a company are the responsibility of its management, not its shareholders.

Of course, a company's majority shareholder has ultimate authority to replace company management or to prevail on company management to take actions consistent with the majority shareholder's wishes. But that is not what PDVSA has done here and despite having done so

---

[40] Doc. #138-2 at 34, 98, 103.

elsewhere. *See Jiménez v. Palacios,* 250 A.3d 814, 825 (Del. Ch. 2019) (describing how PDVSA availed itself of shareholder rights to replace boards of directors of its CITGO subsidiaries incorporated in Delaware), *aff'd*, 237 A.3d 68 (Del. 2020).

When I asked White & Case at oral argument whether it had "gone to El Salvador and sought some declaration of invalidity of Mr. Crespin's position or taken any kind of recourse under El Salvadoran law," counsel replied that "I am not aware of acts taken in El Salvador."[41] Instead, White & Case posits a peremptory right for PDVSA to decide on ALBA's behalf who shall represent the company in court proceedings and over the objection of company management.

I am mindful that El Salvador, like the United States, has chosen to recognize the Interim Government of Venezuela as legitimate, and that it has expelled the Maduro regime's diplomatic corps as well as some members of ALBA's board.[42] But the fact that El Salvador recognizes the Interim Government in general does not signify that it more specifically consents to the right of the Interim Government to meddle with the operation of El Salvador's corporate law or to compromise the 40% ownership interests of ENEPASA as a representative of multiple Salvadoran municipalities.

### *Act of state doctrine*

White & Case argues that the act of state doctrine requires me to defer to the law of Venezuela over the law of El Salvador. Under the act of state doctrine, "the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory." *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897). The Supreme Court has ruled that the act of state doctrine is "a principle of decision binding on federal and state courts alike," under which

---

[41] Doc. #150 at 32.
[42] Docs. #142-3 at 2–3 (¶ 4), #142-6 at 2–3; Doc. #139 at 11 n.7.

14

"the acts of foreign sovereigns taken within their owns jurisdictions shall be deemed valid." *W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l*, 493 U.S. 400, 406, 409 (1990).

But the problem for White & Case's argument is that that the act of state doctrine does not apply to extraterritorial acts of foreign governments. *See, e.g.*, *Bandes v. Harlow & Jones, Inc.*, 852 F.2d 661, 666 (2d Cir. 1988) (declining to apply act of state doctrine to foreign sovereign's attempt to seize property located in the United States); *Republic of Iraq v. First Nat. City Bank*, 353 F.2d 47, 50–51 (2d Cir. 1965) (same). Put differently, "[u]nder the act-of-state doctrine, the assessment of the validity of a foreign law is limited to its application within the sovereign's territory." *Att'y Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 126 (2d Cir. 2001).

Thus, the act of state doctrine compels deference only to the "'acts of a governmental character done by a foreign state within its own territory and applicable there.'" *Bi v. Union Carbide Chems. & Plastics Co. Inc.*, 984 F.2d 582, 586 (2d Cir. 1993) (quoting Restatement (Third) of the Foreign Relations Law of the United States § 443 (1987)). By contrast, "[a]cts of foreign governments purporting to have extraterritorial effect—and consequently, *by definition, falling outside the scope of the act of state doctrine*—should be recognized by the courts only if they are consistent with the law and policy of the United States." *Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 522 (2d Cir. 1985) (emphasis added).[43]

Similarly, the commentary to the Restatement (Fourth) of Foreign Relations Law acknowledges the territorial limits of the act of state doctrine: that the act of state doctrine does

---

[43] I understand *Allied Bank*'s reference to the "law and policy of the United States" to be the principles of conflicts of law as set forth in the Restatement and that I discuss here. So far as I know, the "law and policy of the United States" is not to allow only regimes that the United States likes to apply their laws extraterritorially to conduct that is governed in the first instance by a third country. The Supreme Court has rejected the overbroad application of the act of state doctrine in a political manner to avoid embarrassing foreign governments. *See Kirkpatrick*, 493 U.S. at 408–09.

not apply to extraterritorial acts and instead that the validity of an extraterritorial act of state is subject to "the ordinary rules of the conflict of laws":

> *e. Territorial limits of the doctrine.* The doctrine applies only to an act of state performed with respect to persons, property, or other legal interests within the foreign sovereign's territory. An act partly or fully performed with respect to legal interests outside a state's territory, even if consistent with generally accepted rules of international law governing prescriptive jurisdiction, is subject to the ordinary rules of the conflict of laws, which allow an inquiry into the consistency of the foreign official act with the laws and policies of the forum.

RESTATEMENT (FOURTH) OF FOREIGN RELATIONS LAW § 441 cmt. e (2018).

Here, even assuming that the relevant actions of the Interim Government took place in Venezuela, they purport to apply outside its territory as applied to ALBA in this case. The Interim Government of Venezuela purports to tell a company that is incorporated in El Salvador who it must hire as counsel for U.S. court proceedings. But the government of Venezuela does not have territorial jurisdiction to regulate the internal affairs of companies incorporated in El Salvador or any other country.

Imagine, for example, if the government of Venezuela were to buy shares of a U.S. company like Microsoft and then to decree that henceforth it has authority to decide who shall represent Microsoft in U.S. court proceedings. The act of state doctrine would not compel a U.S. court to follow the law of Venezuela when deciding who may represent Microsoft in U.S. court proceedings, because the act of state doctrine does not require a U.S. court to give effect to extraterritorial acts of foreign governments.

Indeed, "the policies underlying the act of state doctrine are grounded not in the rights of the parties but in comity among nations." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000); *see also* William S. Dodge, International Comity in American Law, 115 COLUM. L. REV. 2071, 2092, 2101–02 (2015). But these comity purposes would be ill-served if the act of

state doctrine were mechanistically applied to privilege the law of Venezuela over the law of El Salvador without engaging in the balancing of interests that is traditionally required by choice-of-law principles.

### *Other cases distinguishable*

White & Case misplaces its reliance on a recent district court decision in this Circuit that involves the same parties—*Caballero v. Fuerzas Armadas Revolucionarias de Columbia*, 2021 WL 1884110 (W.D.N.Y. 2021), *recon. denied*, 2022 WL 71662 (W.D.N.Y. 2022) ("*Caballero WDNY*")—a decision in which Judge Vilardo granted White & Case's motion to substitute counsel over Jiménez's objection in a similar lawsuit involving a claim under the Terrorism Risk Insurance Act. The decision in *Caballero WDNY* focused on the right of PDVSA itself—not one of its majority-owned subsdiaries—to choose its counsel. Because PDVSA is a state-owned company based in Venezuela and in light of the U.S. government's diplomatic recognition of the Interim Government, I have no reason to disagree with Judge Vilardo's conclusion that the act of state doctrine requires deference to the acts of the Interim Government to authorize appointment of counsel for a Venezuelan company like PDVSA. *See Caballero WDNY*, 2020 WL 1884110, at *5–8.

But that is not this case. PDVSA is not a party to this action, and White & Case does not seek to appear as counsel for PDVSA in this action. This case is not about the right of the recognized government of Venezuela to decide who should serve as counsel for a Venezuelan company wholly owned by Venezuela.

Although it is true that *Caballero WDNY* also granted White & Case's motion to substitute as counsel for six of PDVSA's wholly-owned subsidiaries, the decision in *Caballero WDNY* does not touch upon whether these subsidiaries were incorporated in countries other than

17

Venezuela and does not separately analyze White & Case's right to represent any particular subsidiary or engage in a choice-of-law analysis of the type that is required when a court must decide whether one country's law should apply over the law of another country. Again, I have no reason to disagree with the reasoning in *Caballero WDNY* so far as it goes, but I conclude that its facts and reasoning are distinguishable from what is before me now.

Equally distinguishable is the Delaware Chancery Court's decision in *Jiménez v. Palacios*, 250 A.3d 814 (Del. Ch. 2019), *aff'd*, 237 A.3d 68 (Del. 2020). The decision in *Jiménez* did not involve an issue of appointment of counsel. Instead, it involved whether a court in the United States must defer to the decision of the Interim Government in Venezuela to select members of the board of directors for PDVSA. In light of the U.S. government's recognition of the Guaidó government, the court applied the act of state doctrine to defer to the act of the Interim Government to reconstitute the board of PDVSA in Venezuela. *Id.* at 828-34. This aspect of the Delaware court's decision is not inconsistent with my holding which does not question or turn on the validity of the Interim Government's appointment of a new board of directors for a Venezuelan-based company like PDVSA.

The Delaware court also rejected the argument that the internal affairs doctrine under Venezuelan law should trump application of the act of state doctrine, concluding to the contrary that "the act of state doctrine takes priority over the internal affairs doctrine." *Id.* at 835-36. This aspect of the decision is also not inconsistent with my ruling here. The issue here is not whether an act of state of the government of Venezuela takes precedence over the internal corporate law of Venezuela. The issue is whether an act of state of the government of Venezuela takes precedence over the internal corporate law of El Salvador. It does not for the reasons I have discussed.

The remaining cases cited by White & Case are distinguishable for the same reasons. *See Impact Fluid Solutions LP v. Bariven SA*, No. 4:19-cv-652, Doc. #55 (S.D.T.X. 2020); *Republic of Panama v. Air Panama Internacional, S.A.*, 745 F. Supp. 669 (S.D. Fla. 1988); *Republic of Panama v. Republic Nat'l Bank of N.Y.*, 681 F. Supp. 1066, 1073 (S.D.N.Y. 1988). None of them involve the type of multi-jurisdictional facts presented here or an impermissible extraterritorial application of the act of state doctrine at the expense of well-established principles of choice of law.

## CONCLUSION

For the reasons set forth above, the Court DENIES the motion to substitute counsel (Doc. #125). The Clerk of Court shall strike the appearances of Claire A. Delelle, Nicole Erb, Ivan J. Ladd-Smith, and Joseph W. Martini as attorneys of record for ALBA.

It is so ordered.

Dated at New Haven this 13th day of January 2022.

/s/ **Jeffrey Alker Meyer**
Jeffrey Alker Meyer
United States District Judge